**DADE PARK JOCKEY CLUB, Appellant,**

v.

**Mary MINTON, Appellee.**

Court of Appeals of Kentucky.

Jan. 7, 1977.

Armer H. Mahan, Louisville, for appellant.

Ulvester Walker, Henderson, for appellee.

Before GANT, MILLER and VANCE, JJ.

GANT, Judge.

The Plaintiff-Appellee, Mary Minton, sued for injuries sustained in a fall while attending the summer meet of the thoroughbred races at James C. Ellis Park, a track owned and operated by the Appellant, Dade Park Jockey Club. The Trial Court, in finding for Mrs. Minton, awarded her damages in the amount of $20,205.26. The Court overruled the Appellant's Motion for Directed Verdict, as well as the subsequent Motion for Judgment Notwithstanding the Verdict. They appealed from these rulings and, in the alternative, Appellant contends that the Trial Court erred in instructing the jury on the substantial urgency or necessity of Appellee's conduct.

Besides the clubhouse, the track has two major areas for placing bets and cashing tickets. The most frequently used area is the one located on the ground floor under the grandstand and the other area is directly above it on the mezzanine floor. From where Mrs. Minton was sitting on the third floor she could reach the seller's and cashier's windows on the mezzanine by using any of the three ramps leading directly to that level. Two of the ramps are located at each end of the grandstand and they are approximately 50 to 75 feet from and parallel with the middle ramp which is where the fall occurred. Mrs. Minton could also have used the steps down the front of the grandstand to the ground floor where the larger area is located.

Mrs. Minton testified that she had attended the track every day of every meeting for about 17 years and that during that period of time, she sat in the same area of the grandstand and used the middle ramp, averaging six to eight trips per day. Mrs. Minton further testified that this particular ramp always had sand or grit on it and that the ramp had always seemed slick to her. She stated that the sand and grit on the ramp is the same generally found in the land adjacent to the river and that the grandstand is generally an open area and subject to wind currents.

On August 5, 1969, Mrs. Minton fell while using the middle ramp from the grandstand area to the mezzanine floor and sustained a fracture of her left ankle. She testified that it seemed as if there was more of an accumulation of sand or grit on the ramp than usual and that she had noticed it on the ramp the preceding day.

Mrs. Minton had used the middle ramp on four occasions on the day of her fall. She fell on her fourth trip when going to cash her ticket at the windows on the mezzanine floor. Mrs. Minton knew that the ramp was slick since she testified that one of her feet started to slip and she had to grab the hand rail on one of her earlier trips down the ramp. She claimed that the grit or sand on the ramp caused her fall. Mrs. Minton believed that the sand or grit on which she slipped was the same sand and grit that had been on the ramp the preceding day.

Appellant contends that the court erred in denying its Motion for a Directed Verdict, since it did not have a duty to keep the ramp free of sand and grit which are natural elements for the area where the track was located. Appellant cites *Standard Oil Co. v. Manis,* Ky., 433 S.W.2d 856 (1968); *Bryant v. Kathryn Shoppe, Inc.,* Ky., 457 S.W.2d 483 (1970), and *Curtis v. Traders National Bank,* 314 Ky. 765, 237 S.W.2d 76 (1951) for this contention. In examining these cases, the court finds two important distinctions between them and the case at bar. First, the natural elements involved in this trilogy of cases were ice, snow and blowing rain water. This court is of the opinion that the reasoning relied upon in the trilogy of cases is not applicable when the natural elements are sand and grit. Second, the inclement weather in the trilogy was either occurring at the time or shortly preceding the creation of the condition which caused the fall. The evidence in

the present case shows that there had always been sand and grit on the ramp and that the sand and grit had accumulated on the day of the fall. There being no evidence of inclement weather or of a strong wind which may have caused the accumulation of the sand and grit, we hold that the Appellee failed to meet her burden of proof as set forth by the following standard:

". . . where it is not shown that the condition was created by the possessor or under his authority, or as one about which he has taken action, then it is necessary to introduce sufficient proof by either direct evidence or circumstantial evidence that the condition existed a *sufficient length of time* prior to the injury so that in the exercise of ordinary care, the possessor could have discovered it and either remedied it or given fair adequate warning of its existence to those who might be endangered by it." *Cumberland College v. Gaines,* Ky., 432 S.W.2d 650 (1968).

■ Appellant assigns as error the court's instruction to the jury on the substantial urgency or necessity for the plaintiff to subject herself to the risk of using the dangerous middle ramp. In rebuttal, the Appellee, in her brief cites *Houchin v. Willow Avenue Realty Co.,* Ky., 453 S.W.2d 560 (1970) for the following:

". . . Where known antecedent negligence creates a known risk at the time the plaintiff chooses to subject himself to the risk, the question of whether the plaintiff's subjection of himself to the risk constitutes 'unreasonable' conduct, also called 'contributory negligence,' is tested in part by the necessity for the plaintiff's action . . . where the defendant's already-committed negligent acts of which the plaintiff is aware have created a risk, also of which the plaintiff is aware, the plaintiff cannot recover if there was 'no substantial necessity or urgency' for the plaintiff's subjecting himself to the risk, or if the risk is one that easily could have been eliminated before the plaintiff took action . . . ."

The following excerpts from the testimony of Mrs. Minton prove that she was aware of the risk at the time she decided to proceed down the ramp.

Question. "And had you had any, on the occasion that you had used the ramp, prior to the accident, and I am talking about on this day, had you had any difficulty with regard to going up and down the ramp?" Answer. "Yes, I noticed it was slick." Question. "How did you notice that, Mrs. Minton?" Answer. "Well, one of my feet started to slip one time." Question. "And what did you do?" Answer. "I grabbed hold of the hand rail."

This Court agrees that the *Houchin* case, *supra,* is an extension of the rule set out in *Bonn v. Sears, Roebuck & Co.,* Ky., 440 S.W.2d 526 (1969). Therefore, the only issue before this Court is whether there was sufficient evidence of a "substantial necessity or urgency" to constitute a jury question. The guideline set out in *Parker v. Redden,* Ky., 421 S.W.2d 586 (1967) is as follows:

"Our answer is that if there was no substantial necessity or urgency for the plaintiff's subjecting himself to the risk, or if the risk was one that easily could have been eliminated before the plaintiff took action, the plaintiff who took the risk must be considered as a matter of law to have acted unreasonably and he will not recover. On the other hand, if there was an urgent necessity for the plaintiff to incur the risk, *such as to save a life,* and if the risk could not easily have been eliminated, there is no reason why the damage suffered by the plaintiff should be borne by him rather than by the defendant who negligently created the risk." Citing Restatement, Torts, Second, sec. 466, Comments, pages 512 to 514, sec. 472, pages 521, 522; Prosser, Law of Torts, Hornbook Series, 3rd Ed., sec. 67, pages 450, 451.

The Restatement, Torts, Second, sec. 466 gives us some insight as to when one may intentionally expose himself to a known danger. That section states that a plaintiff is not negligent in exposing himself to a

known danger ". . . if such exposure is necessary to the safety of a third person or to accomplish some end which is of purely public interest, as when he drives at a dangerous rate of speed in order to aid the police in apprehending a criminal." Mrs. Minton chose to use the middle ramp only because she believed the stairs to the windows on the ground floor would be "inconvenient" or "unhandy." This court is of the opinion that the inconvenience under these circumstances was not "a substantial necessity or urgency" of the magnitude contemplated in *Parker v. Redden*. Therefore, this court holds, as did the court in *Houchin,* that the ". . . character of the risk accompanied by the plaintiff's knowledge of it as balanced with the purpose of the mission and the ease with which the risk could have been eliminated impelled the conclusion that the plaintiff's conduct was unreasonable in the circumstances and that she was contributorily negligent as a matter of law."

For the above stated reasons, the lower court is reversed.

All concur.