**Emma B. HOUCHIN, Appellant,**

v.

**WILLOW AVENUE REALTY COMPANY and Martin L. Adams and Sons, Inc., Appellees.**

Court of Appeals of Kentucky.

May 1, 1970.

Robert J. Beale, Mayer, Cooper & Kiel, Louisville, for appellant.

John K. Gordinier, Curtis & Rose, Louisville, for appellees.

REED, Judge.

The plaintiff-appellant, Emma B. Houchin, was injured when she fell while descending basement stairs in an apartment building. The plaintiff, a tenant occupying one of the four apartments in the building, sued her landlord, the defendant-appellee Willow Avenue Realty Company, and its managing agent, the defendant-appellee Martin L. Adams and Sons, Inc. The trial jury found in favor of the plaintiff and awarded her damages in the amount of $2,000. The plaintiff moved for a new trial asserting that the damages awarded were inadequate and that she was entitled to a new trial on the sole issue of damages or alternatively she contended that she was ntitled to a new trial on all issues (liabil-ity and damages). The defendants, having theretofore moved for directed verdicts in their favor, sought judgment notwithstanding the verdict. The trial judge held the plaintiff contributorily negligent as a matter of law and judgment notwithstanding the verdict was thereafter entered dismissing the plaintiff's action. She appeals. We affirm.

The determinative question in this case is whether or not the plaintiff's alleged contributory negligence was properly a jury issue. The negligence of the defendants is apparent and is actually not seriously contested. The relationship of landlord and tenant existed but this is significant only to the extent that this status delineates in a fashion the rights and duties of the parties inter se. The principles of negligence and contributory negligence are fully applicable.

The apartment house contained a basement that was used in common by the tenants of the four apartments for their convenience. Storage bins and washing machine hookups were provided by the landlord for the use of the tenants. Entrance to the basement was by means of a door located at the rear of the hallway on the first floor. A wooden stairway led from the hallway to the basement. Just inside the basement door there was a light switch that activated a ceiling fixture located over and just to the right of the stairs. There were four other lights in the basement, each one individually activated and located generally in the area of the washing machines and storage bins.

About two weeks before the accident, plaintiff noticed the light at the bottom of the stairs was out. She reported this condition to the landlord's managing agent. The light was not replaced. During the interim period of two weeks, plaintiff made some two or three trips to the basement. She testified that the trips were made only in daylight when the weather was clear and more sunlight present, which provided better illumination through the small windows

located in the basement, than was present on the occasion of the accident.

On the morning she was injured, plaintiff and her daughter, Mrs. Wilson, decided to wash some curtains. Mrs. Wilson proceeded down the basement stairway carrying a basket of curtains followed by her mother. Plaintiff took hold of the handrail, with which she was fully familiar, and descended the stairs. She proceeded down the steps successfully until she came to the next to the last step at which place the handrail ended. Plaintiff said that she stepped for the floor because she couldn't see the outside of the remaining step. Apparently by reason of missing the last step, she slipped and fell to the floor. When plaintiff and Mrs. Wilson first reached the basement stairway, Mrs. Wilson tried the light switch, both women noticed the light was out, but Mrs. Wilson proceeded to descend and plaintiff decided to follow her despite the plainly apparent lack of illumination, particularly at the lower portion of the stairway. The day was dark and gloomy.

The defendants were negligent and the plaintiff was aware of their negligence. She knowingly encountered a risk from the known antecedent negligence of the defendants. The plaintiff argues that a tenant has the right to encounter known hazards created by known antecedent negligence of the landlord because of the legal relationship between them and in such instances the question of whether the plaintiff's conduct constitutes contributory negligence is for the jury to determine. She relies principally on the case of Rodgers v. Stoller, 284 Ky. 108, 143 S.W.2d 1047 (1940); she also cites other cases from this jurisdiction involving personal injury claims of tenants against landlords wherein the issue of contributory negligence was held to be for the jury's determination.

The defendants cite cases not involving the landlord-tenant status but which do deal with the invitee or business-visitor relationship such as Layman v. Ben Snyder, Inc., Ky., 305 S.W.2d 319 (1957) and Humbert v. Audubon Country Club, Ky., 313 S.W.2d 405 (1958). These cases declare the general rule to the effect that a person who fails to exercise ordinary care for his own safety is guilty of negligence and his right of recovery for injury is barred. The defendants also cite authority that one who enters darkness, realizing his difficulty in seeing, assumes the risk of unseen hazards that could be seen with the aid of light. Whelan v. Van Natta, Ky., 382 S.W.2d 205 (1964), and Forman v. Silver, Ky., 313 S.W.2d 420 (1958). The language in the principal cases relied on by defendants is cast in terms of "assumption of risk."

Three recent collections of cases applicable to the problem of the tenant injured due to lack of lighting which the landlord had a duty to provide and the question of the tenant's conduct on the occasion of the accident may be found in 25 A.L.R.2d 444, 25 A.L.R.2d 496, and 22 A.L.R.3d 289. Varying criteria are used by different jurisdictions to determine whether the injured plaintiff's action in voluntarily encountering the known hazard bars recovery or presents a jury issue as to whether the injured plaintiff's conduct was "excusable" or "reasonable" under the particular factual circumstances presented.

We are one of the few jurisdictions in the United States that have squarely abolished the doctrine of assumption of risk as a separate defense. Parker v. Redden, Ky., 421 S.W.2d 586 (1967). Our rule established in that opinion is that where known antecedent negligence creates a known risk at the time the plaintiff chooses to subject himself to the risk, the question of whether the plaintiff's subjection of himself to the risk constitutes "unreasonable" conduct also called "contributory negligence" is tested in part by the necessity for the plaintiff's action. According to the Parker case, where the defendant's already-committed negligent acts of which the plaintiff is aware have created a risk also of which the plaintiff is aware, the plaintiff cannot recover if there was "no sub-

stantial necessity or urgency for the plaintiff's subjecting himself to the risk, or if the risk is one that easily could have been eliminated before the plaintiff took action, * * *."

Plaintiff was a tenant and had a right to use the basement stairway, but in the absence of special circumstances there was not the same necessity for encountering a hazard in connection with its use as is true where the hazard exists in connection with the use of the usual means of ingress and egress to the premises. Hence, Rodgers v. Stoller, 284 Ky. 108, 143 S.W.2d 1047 (1940) is distinguishable.

The extent of the hazard and its apparent nature are well illustrated by the following excerpt from the cross-examination of plaintiff:

"Q. 211. And I believe it was very dark, was it not?

A. Very dark, yes.

Q. 212. In fact, I believe you described it once before as being pitch dark?

A. No, I wouldn't say it was pitch dark, no.

Q. 213. Well, it was so dark you couldn't see the steps?

A. You couldn't see the outline of the steps, that's right.

Q. 214. You couldn't tell whether there was a step there or not?

A. Well, no, no.

* * * * * *

Q. 217. Did you use the handrail on this occasion?

A. Yes, I did because you couldn't see the outline of the steps.

Q. 218. This was obvious, when you opened the door up at the top and the light didn't go on, you knew it was dark down there?

A. Yes, I knew it was dark."

The plaintiff was not acting under such urgent necessity that she could not have been expected to have secured means to eliminate the risk. A flashlight or other convenient measures to provide illumination could have been utilized. In our view, the elements of urgency and substantial necessity were absent. The character of the risk accompanied by the plaintiff's knowledge of it as balanced with the purpose of the mission and the ease with which the risk could have been eliminated impel the conclusion that the plaintiff's conduct was unreasonable in the circumstances and that she was contributorily negligent as a matter of law. Of course, where reasonable minds could differ about the presence or applicability of the criteria to determine the question of substantial necessity or urgency or the degree of difficulty in effectively eliminating the risk prior to encountering it, a jury issue is presented as was held under the factual picture presented in the Parker case.

We have not adopted the comparative negligence doctrine in Kentucky under which the defendant is relieved from compensating an injured plaintiff to the extent of the plaintiff's contributory fault. We have abolished the separate defense of assumption of risk. In this state of applicable law governing tort actions, we conclude that the contributory negligence of a plaintiff who voluntarily encounters a known risk that is created by known antecedent negligence of the defendant must be tested in the light of the substantial necessity for the plaintiff's conduct.

The judgment is affirmed.

MILLIKEN, NEIKIRK, OSBORNE and STEINFELD, JJ., concur.