**Margie Montgomery HILEN, Appellant,**

v.

**Keith HAYS, Appellee.**

Supreme Court of Kentucky.

July 5, 1984.

**714**

William R. Garmer, Perlman & Garmer, PSC, Lexington, for appellant.

C. William Swinford, Stoll, Keenon & Park, Lexington, for appellee.

Bert T. Combs, Lawrence E. Forgy, Jr., Lexington, for Peerless Coal Co.

LEIBSON, Justice.

The appellant, Margie Montgomery Hilen, was severely injured when the automobile in which she was a passenger was driven into the back of another vehicle and overturned. She sued the driver, appellee Keith Hays. There was no question but that the cause of the accident was the driver's negligent operation of the vehicle. There was a factual dispute as to whether the passenger failed to exercise reasonable care for her own safety by riding with a person whom she knew or should have known to be too intoxicated to drive safely.

At the conclusion of the trial the judge directed a verdict as to appellee's negligence and submitted the case to the jury solely on the issue of appellant's contributory negligence. The jury was given the usual instruction that contributory negligence was a complete bar to any recovery. The appellant objected and tendered an instruction based on the doctrine of comparative negligence, which was refused. The jury found for the appellee and this appeal followed. The Court of Appeals affirmed. We have granted discretionary review.

The sole issue before us is whether negligence on the part of the appellant contributing to her injury should be a complete bar to any recovery, as is the traditional rule in the Commonwealth, or whether the time has come for us to reject this rule and adopt the doctrine of comparative negligence allocating responsibility for the injury between the parties in proportion to their contributory fault.

There are a number of significant issues underlying the question before us. These include consideration of the origin and development of our present rule where contributory negligence is a complete defense, the doctrine of stare decisis, whether the judiciary should defer to the legislature in this matter, and the role of fundamental fairness in the development of the common law. Further, if changes are to be made, we must consider whether such changes should be broad or narrow in scope and when they should be implemented.

Contributory negligence developed as a defense to a negligence action at a comparatively late date. The earliest reported case is *Butterfield v. Forrester*, 11 East 60, 103 Eng.Rep. 926 (1809). The rule in *Butterfield v. Forrester* entered American jurisprudence in 1824 in the Massachusetts case of *Smith v. Smith*, 2 Pick. (19 Mass.) 621 (Mass.1824). The first Kentucky case on record to apply this principle is *Newport News & M.V.R. Co. v. Dauser*, 13 Ky.L. Rep. 734 (1892), which is reported as holding:

"(I)f the plaintiff so far contributed to the injury that but for his contributory

negligence the injury would not have been received, he cannot recover, ..."

Thereafter, in a series of cases extending through 1970,[1] our Court continued to recognize and apply the principle of contributory negligence as a complete bar to recovery without consideration to the relative merits of comparative negligence as an alternative. The last reported opinion from this Court making a clear statement of the rule is *Houchin v. Willow Avenue Realty Co.*, Ky., 453 S.W.2d 560, 563 (1970), stating that "we have not adopted the comparative negligence doctrine in Kentucky ..."

There have been several reported cases since *Houchin* in which our intermediate appellate court was asked to consider the comparative negligence alternative but held, quite properly, that if previous decisions upholding contributory negligence as a complete defense are to be overruled, the decision would have to emanate from the Supreme Court. *Mackey v. Greenview Hospital, Inc.*, Ky.App., 587 S.W.2d 249 (1979); *Vinson v. Gobrecht*, Ky.App., 560 S.W.2d 242 (1977).

This brief historical review illustrates several important points. Section 233 of the Kentucky Constitution provides:

"All laws which, on the first day of June, one thousand seven hundred and ninety-two, were in force in the State of Virginia, and which are of a general nature ... shall be in force within this State until they shall be altered or repealed by the General Assembly."

This provision had the effect of adopting as the law of this state the common law of England that was part of the law of the State of Virginia at the time. *Coleman v. O'Leary's Exr.*, 114 Ky. 388, 70 S.W. 1068 (1902); *Jenkins v. Berry*, 119 Ky. 350, 83 S.W. 594 (1904). But contributory negligence as a bar to recovery was not part of the law of the State of Virginia nor part of the English common law in 1792. It is court-made law originating *after* the applicable constitutional provision.

The next important fact, historically, is that the Kentucky General Assembly has failed to address this subject. The only statutes which appear to have any relevance to our consideration are: (1) KRS 454.040 which provides that a jury "may" elect to apportion damages among defendants jointly or severally liable; (2) KRS 411.320 which provides that contributory negligence is a defense to a product liability action; and (3) KRS 277.320 which adopts comparative negligence as the rule for railroad employees in actions against their employers, extending the same provision as found in the Federal Employers' Liability Act (FELA), 45 U.S.C.S. § 53, to Kentucky causes of action if not covered by the federal act.

The first statute, KRS 454.040, if it has a bearing, seems to favor a policy of liability apportioned according to fault. The second statute, KRS 411.320, was intended to settle an ongoing controversy as to whether contributory negligence is a defense to a products liability action. It may be arguable that the statute is capable of being construed as providing for contributory negligence as a complete defense to a products liability action (a question which remains open for a case in point), but from its background it is clear that the legislative purpose was to deal with the availability of contributory negligence as a defense in products cases and not with whether contributory negligence should result in a complete bar or a proportionate recovery. The third statute, KRS 277.320, not only expresses a preference for comparative negligence in a suit by an employee against a common carrier by railroad, but also a preference for the pure form of comparative negligence.

Thus an historical review compels the conclusion that the contributory negligence rule as it applies to this case is court-made

1. *Sandy River Cannel Coal Co. v. Caudill*, 22 Ky.L.Rep. 1175, 1176, 60 S.W. 180 (1901); *Peerless Mfg. Corp. v. Davenport*, 281 Ky. 654, 136 S.W.2d 779 (1940); *Price v. T.P. Taylor & Co., Inc.*, 302 Ky. 736, 196 S.W.2d 312 (1946); *Myers v. Ben Snyder, Inc.*, 313 Ky. 832, 233 S.W.2d 1016 (1950); *Felix v. Stavis*, Ky., 385 S.W.2d 72 (1964); *Williams v. Chilton*, Ky., 427 S.W.2d 586 (1968); *Houchin v. Willow Ave. Realty Co.*, Ky., 453 S.W.2d 560 (1970).

law that bears the imprimatur of neither the Kentucky constitution nor the General Assembly.[2] After conducting a similar historical review, Prosser states in the *Law of Torts,* (4th Ed., 1971), p. 434:

"There never has been any essential reason why the change could not be made without a statute by the courts which made the contributory negligence rule in the first place ..."

Having deference to the doctrine of stare decisis, the courts of the several states have been understandably reluctant to abandon contributory negligence as a complete defense notwithstanding the relative merits of the two competing positions. The tendency was to defer consideration of comparative negligence to the legislatures of the several states, although there was no statute mandating the traditional rule and thus no question of separation of powers involved. Courts were leaving to the legislature responsibility for undoing what the courts had done in the first place.

So the evolution towards comparative negligence began in the various state legislatures first in a trickle and then in an avalanche. The first comparative negligence statute was enacted in Mississippi in 1910. Wisconsin and Nebraska followed in 1913, South Dakota in 1941, Arkansas in 1957, Maine in 1964. Following a full-scale public debate of the relative merits of comparative negligence in textbooks and treatises, twenty-six more states followed between 1969 and 1983. At present count thirty-two states, Puerto Rico, and the Virgin Islands have adopted comparative negligence or comparative fault by statute.[3]

In addition, between 1975 and the present, courts in nine other states have refused to wait further for their legislatures to act and have adopted comparative negligence by judicial decision.[4] Thus the doctrine of contributory negligence as a complete bar, challenged by most legal scholars in the 50's and 60's, has been

**2.** It is an interesting aside that the form of contributory negligence involved in this case is the old common law doctrine of assumption of the risk. We have abolished the separate defense of assumption of the risk in *Parker v. Redden,* Ky., 421 S.W.2d 586 (1967), one example of fact that this court has the power and the obligation to change a long established court-made rule in appropriate circumstances.

**3.** (1) *Arkansas,* Ark.Stat.Ann. §§ 27–1763 to –1765 (1979). (2) *Colorado,* Colo.Rev.Stat. § 13–21–111 (1973 & Supp.1982). (3) *Connecticut,* Conn.Gen.Stat. § 52–572h, –572o (1983). (4) *Georgia,* Ga.Code Ann. § 105–603 (supp. 1982). (5) *Hawaii,* Haw.Rev.Stat. § 663–31 (1976). (6) *Idaho,* Idaho Code §§ 6–801 to –806 (1979). (7) *Indiana,* Ind.Code Ann. § 34–4–33–1 to 8 (Burns Supp.1983). (8) *Kansas,* Kan.Stat. Ann. § 60–258a, 258b (1976). (9) *Louisiana* La. Civ.Code Ann. art. 2323 (West Supp.1983). (10) *Maine,* Me.Rev.Stat.Ann. tit. 14, § 156 (1964). (11) *Massachusetts,* Mass.Gen.Laws Ann. ch. 231, § 85 (Michie/Law.Coop.Supp.1983). (12) *Minnesota,* Minn.Stat.Ann. § 604.01–.02 (West Supp.1983). (13) *Mississippi,* Miss.Code Ann. § 11–7–15 (1972). (14) *Montana,* Mont.Code Ann. §§ 27–1–702, –703 (1981). (15) *Nebraska,* Neb.Rev.Stat. § 25–1151 (1979). (16) *Nevada,* Nev.Rev.Stat. § 41–141 (1979). (17) *New Hampshire,* N.H.Rev.Stat.Ann. § 507:7–a (Supp.1979). (18) *New Jersey,* N.J.Stat.Ann. §§ 2A:15–5.1 to –5.3 (West Supp.1983–1984). (19) *New York,* N.Y.Civ.Prac.Law § 1411 (McKinney 1976). (20) *North Dakota,* N.D.Cent.Code § 9–10–07

(1975). (21) *Ohio,* Ohio Rev.Code Ann. § 2315.-19 (Page 1982). (22) *Oklahoma,* Okla.Stat.Ann. tit. 23, §§ 13–14 (West Supp.1982–1983). (23) *Oregon,* Or.Rev.Stat. § 18–470 (1981). (24) *Pennsylvania,* Pa.Stat.Ann. tit. 42, § 7102 (Purdon 1982 and Supp.1983–1984). (25) *Rhode Island,* R.I.Gen.Laws §§ 9–20–4, –4.1 (Supp.1982). (26) *South Dakota,* S.D.Comp.Laws Ann. § 20–9–2 (1979). (27) *Texas,* Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon Supp.1982–1983). (28) *Utah,* Utah Code Ann. §§ 78–27–37 to –43 (1953). (29) *Vermont,* Vt.Stat.Ann. tit. 12, § 1036 (Supp. 1983). (30) *Washington,* Wash.Rev.Code Ann. §§ 4.22.005–.920 (Supp.1983–1948). (31) *Wisconsin,* Wis.Stat.Ann. § 895.045 (West 1983). (32) *Wyoming,* Wyo.Stat. § 1–1–109 (1977).

*Puerto Rico,* P.R.Laws Ann. tit. 31, § 5141 (1968). *Virgin Islands,* V.I.Code Ann. tit. 5, § 1451 (Supp.1982).

**4.** (1) *Alaska, Kaatz v. State,* 540 P.2d 1037 (Alaska 1975). (2) *California, Li v. Yellow Cab Co.,* 13 Cal.3d 804, 532 P.2d 1226, 119 Cal.Rptr. 858 (1975). (3) *Florida, Hoffman v. Jones,* 280 So.2d 431 (Fla.1973). (4) *Illinois, Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981). (5) *Iowa, Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982). (6) *Michigan, Kirby v. Larson,* 400 Mich. 585, 256 N.W.2d 400 (1977). (7) *New Mexico, Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981). (8) *West Virginia, Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (W.Va.1979). (9) *Missouri, Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983).

generally rejected since then, first legislatively, and then judicially where the legislature has refused to act. As the Supreme Court of Missouri stated in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.1983):

"We have remained quiescent more than five years while waiting for the legislature to act....

... legislative failure to enact this reform reflects inertia rather than community sentiment." *Id.* at 14–15.

A comparative negligence bill was introduced at the 1968 session of the Kentucky General Assembly and a similar bill has been introduced in most, if not all, sessions since then. Two bills were introduced in 1984 and neither got out of committee. Senate Bill 172, 84 BR 1593; Senate Bill 211, 84 BR 1734.

■ In broad outline, stare decisis directs us to "stand by" our previous decisions unless there are sound legal reasons to the contrary. Every case must be decided with a respect for precedent. But the doctrine of stare decisis does not commit us to the sanctification of ancient fallacy. In *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1983), the Supreme Court of Iowa observed:

"(S)tare decisis does not preclude the change. That principle does not require blind imitation of the past or adherence to a rule ... We must reform common law doctrines that are unsound and unsuited to present conditions. *Id.* at 753.

■ The common law is not a stagnant pool, but a moving stream. *City of Louisville v. Chapman*, Ky., 413 S.W.2d 74, 77 (1967). It seeks to purify itself as it flows through time. The common law is our responsibility; the child of the courts. We are responsible for its direction. In *International News Services v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), Mr. Justice Brandeis wrote:

"The unwritten law possesses capacity for growth; and has often satisfied new demands for justice by invoking analogies or by expanding a rule or principle." 248 U.S. at 262, 39 S.Ct. at 81.

Mr. Justice Sutherland wrote in *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933):

"(T)o say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a 'flexibility and capacity for growth and adaptation' which was 'the peculiar boast and excellence' of the system in the place of its origin." 290 U.S. at 383, 54 S.Ct. at 216.

Thus, with forty-one out of fifty states having adopted comparative negligence, nine by judicial decision after showing due regard for stare decisis and due deference to their legislatures, the time has come for us to address the real question in this case: whether there are principles of fundamental fairness, underlying the application of contributory negligence as a defense, so compelling that contributory negligence as a complete defense should be discarded as part of the common law of this state in favor of comparative negligence.

A list of the critics of contributory negligence as a complete bar to a plaintiff's recovery reads like a tort hall of fame. The list includes, among others, Campbell, Fleming, Green, Harper and James, Dreton, Leflar, Malone, Pound and Prosser. In 1953 Prosser wrote:

"The attack upon contributory negligence has been founded upon the obvious injustice of a rule which visits the entire loss caused by the fault of two parties on one of them alone, and that one the injured plaintiff, least able to bear it, and quite possibly much less at fault than the defendant who goes scot-free. No one has ever succeeded in justifying that as a policy, and no one ever will." Prosser, *Comparative Negligence*, 51 Mich.L. Rev. 465, 469 (1953).

In *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975):

"The essence of that criticism has been constant and clear: the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault. Against this have been raised arguments in justification, but none have proved even remotely adequate to the task.... In a system in which liability is based on fault, the extent of that fault should govern the extent of liability...." 119 Cal.Rptr. at 862–63, 532 P.2d at 1230–31.

At oral argument in the present case appellee's counsel conceded that the present system creates certain "inequities," claiming that these inequities are supposedly cured by juries acting in disregard of their instructions to make comparative findings. Assuming there is any truth to this speculation, it only confirms that the concept of allocating liability proportionate to fault remains "irresistible to reason and all intelligent notions of fairness." *Li v. Yellow Cab Co., supra,* 119 Cal.Rptr. at 863, 532 P.2d at 1231.

■ Comparative negligence is *not* "no-fault," but the direct opposite. It calls for liability for any particular injury in direct proportion to fault. It eliminates a windfall for either claimant or defendant as presently exists in our all-or-nothing situation where sometimes claims are barred by contributory negligence and sometimes claims are paid in full regardless of contributory negligence such as in cases involving last clear chance or defendant's willful or wanton negligence. See *Vasseur v. Rose,* Ky., 415 S.W.2d 361 (1967), last clear chance; *First National Ins. Co. of America v. Harris,* Ky., 455 S.W.2d 542 (1970), willful or wanton negligence.

The answer to the charge that in a comparative negligence system the claimant recovers for his own wrong is that the opposite is true. Even where comparative negligence is applied 100% (the so-called "pure" form of comparative negligence), the claimant who is 95% negligent recovers from the defendant only for that small portion of the injury, 5%, which is fairly attributable to the defendant's fault. In theory, the system is 100% fair.

The arguments against comparative negligence are directed only to speculation that it will be less fair in practice. There is no hard evidence to support such speculation. We do not proceed from the premise that defendants any more than claimants will be treated dishonestly by juries.

"By 1850 England had become heavily industrialized. This unprecedented development of industry and the general realization that it was related to Britain's continuance as the dominant world power brought out the protective instincts of her judiciary. The English courts eagerly seized upon Lord Ellenborough's holding in *Butterfield* as a most effective protective device. The American judiciary was no less enthusiastic." Woods, *Comparative Fault,* (Lawyers Coop. & Bancroft-Whitney, 1978), # 1:4, pp. 7–8.

It may well be that the 19th century judicial mind perceived of the need for courts to tilt the scales of justice in favor of defendants "to keep the liabilities of growing industry within some bounds." Prosser, *The Law of Torts, supra,* p. 418. But assuming such a rule was ever viable, certainly it no longer comports to present day morality and concepts of fundamental fairness.

Above all else, court-made law must be just. It must accommodate justice by evolution or anticipate revolution.

"Justice, justice shall you pursue, that you may live in the land which God gives you." Deuteronomy 16, 20.

To those who speculate that comparative negligence will cost more money or cause more litigation, we say there are no *good* economies in an *unjust* law.[5]

There are a number of further arguments presented to us in defense of the status quo. In each instance these argu-

---

**5.** Prosser, *Law of Torts,* (4th Ed., 1971), p. 438: "There has been much controversy over the prospective effect upon liability insurance rates, which, so far as appears, has been nothing very unsettling in the states where the statutes have been adopted." (Studies cited).

ments have been discussed and rejected by various courts and commentators to which we have referred in this opinion. It would prolong this opinion unduly without adding anything new to the body of law on the subject to further discuss the fairness issue. As with the first question as to this Court's authority and responsibility to make such a decision, the answer to the second question as to the fundamental fairness of comparative negligence also weighs overwhelmingly in favor of the appellant.

Having concluded that contributory negligence as a complete defense in Kentucky should give way to comparative negligence, the next question is what form of comparative negligence should be adopted. Although there are variations in the types of comparative negligence, the two basic systems are the "modified" form and the "pure" form, "modified" meaning "limited" and "pure" meaning "complete." Under the "modified" form, with variations depending on the system, the claimant can recover if his percentage of fault is not equal to or greater than that of the defendant(s). Under the "pure" form, the claimant's recovery is reduced by the amount of fault attributable to him, but he may recover regardless of whether his fault is equal to or greater than than of the defendant(s).

Opponents of the "modified" form of comparative negligence argue that this system encourages appeals on the narrow but crucial issue of whether plaintiff's negligence was equal to or greater than defendant's, and further argue that it does not abrogate contributory negligence but "simply shifts the lottery aspect of the rule to a different ground." *Li v. Yellow Cab Co.,* *supra,* 119 Cal.Rptr. at 874, 532 P.2d at 1242. See also *Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886, 898 (1981); *Kirby v. Larson,* 400 Mich. 585, 256 N.W.2d 400, 428 (1977); *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234, 1243 (1981).

> "They (limited comparative negligence statutes) have led, under all of the statutes, to an excessive number of appeals, in which the court is asked to review the jury's findings as to the comparative

fault." Prosser, *Law of Torts, supra,* 437–8.

In eight of the nine states where comparative negligence has been adopted by judicial decision, the courts have opted for the "pure" form. Only West Virginia has held to the contrary. *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (W.Va.1979). The supreme courts of the eight states adopting the "pure" form concluded that it is fairer, simpler to administer, more just, and the most equitable.

Judicial history in Wisconsin where modified comparative negligence was legislatively adopted in 1913 is the most extensive of any state. Previous history in Wisconsin indicates a large number of appeals focused on the narrow question of whether plaintiff's negligence amounted to 50% or less of the aggregate. Prosser, *Comparative Negligence,* 41 Cal.L.Rev. 1, 23 (1953). "(I)t is more compelling to appeal when you have been awarded nothing than when you have received some compensation." *Kirby v. Larson,* 400 Mich. 585, 256 N.W.2d 400, 428 (1977).

In contrast to change by the judiciary where pure comparative negligence has been the overwhelming choice, the majority of state legislatures adopting comparative negligence have favored some modified form. After researching this difference, Prosser concludes:

> "All of these restrictions (modified forms) are obviously the result of compromise between conflicting interests in the legislatures, and smack of political expediency rather than of any reason or logic in the situation." Prosser, *Law of Torts,* (4th Ed., 1971), 437.

The treatise by Judge Henry Woods, *Comparative Fault, supra* p. 11, includes an extensive review of both the legislative and judicial experience of our sister states with comparative negligence. Such a review compels us to conclude that the pure form of comparative negligence is preferable over any of the variety of modified forms that have been suggested. Having so concluded, we must now decide how to implement this decision for this case and

for other cases now in the system where this decision will have a bearing.

Henceforth, where contributory negligence has previously been a complete defense, it is supplanted by the doctrine of comparative negligence. In such cases contributory negligence will not bar recovery but shall reduce the total amount of the award in the proportion that the claimant's contributory negligence bears to the total negligence that caused the damages. The trier of fact must consider both negligence and causation in arriving at the proportion that negligence and causation attributable to the claimant bears to the total negligence that was a substantial factor in causing the damages.

In order to apply this rule in the present case, we extract the following jury instructions from the Uniform Comparative Fault Act, § 2, 12 U.L.A., Civ.Proc. & Rem. Law, 39 (Cum.Supp.1984), for the jury to use in the event if finds both parties at fault:

"(a) ... the court ... shall instruct the jury to answer special interrogatories ... indicating:

(1) the [total] amount of damages [the] claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault ... that is allocated to [the] claimant [and] defendant, [the total being 100%].

(b) In determining the percentages of fault, the [jury] shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed."

We adopt only this part of the Uniform Comparative Fault Act which is directly applicable to this case and we express no opinion as to future application of any portion of the Act not quoted expressly in this opinion.

The final question that remains to be addressed is the application of the present decision to this case and others where contributory negligence is an issue. Other courts that have adopted comparative neg-

ligence have all made the doctrine effective to pending cases to some extent. The appellee complains that the rules should not be changed in his case. But unlike contract law the appellee here did not act in reliance on the state of the law at the time of the act, and has no legitimate complaint against the retroactive application of a change. We conclude, as did the Missouri court in *Gustafson v. Benda, supra,* and the Iowa court in *Goetzman v. Wichern, supra,* that the comparative negligence doctrine shall apply to:

1) The present case;

2) All cases tried or retried after the date of filing of this opinion; and

3) All cases pending, including appeals, in which the issue has been preserved.

The decision of the Court of Appeals and the trial court is reversed, and the within action is remanded to the trial court for proceedings in conformity with this opinion.

STEPHENS, C.J., and AKER, GANT, LEIBSON and WINTERSHEIMER, JJ., concur.

STEPHENSON and VANCE, JJ., dissent, and will file dissenting opinion.

LEIBSON, Justice, concurring.

I concur with the majority opinion. But, in addition I would provide guidelines for application of the new rule to other situations that will be affected by the change to comparative negligence. As a general rule we do not decide in advance collateral issues which eventually will be forthcoming. Those issues are resolved later on in the context of concrete cases. Nevertheless trial courts should have some point of departure for dealing with the complicated issues that will be precipitated by a change of this magnitude.

As stated by the Supreme Court of Missouri in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983), the most recent case judicially adopting comparative negligence:

"All that remains is for us to find the simplest and most clear, concise, and di-

rect method for adopting a comprehensive system of comparative fault for the trial of tort cases and a procedure for accomplishing the transition to comparative fault." 661 S.W.2d at 15.

The Missouri court then designated the comparative fault system structured in the Uniform Comparative Fault Act, §§ 1–6, 12 U.L.A., Civ.Proc. & Rem.Law, 35–46 (Cum. Supp.1984), to provide the trial court instructions for the pending case and to provide guidance "insofar as possible" in future cases.

The Missouri approach is well suited to our problems in the present case and the needs of our system. The Uniform Comparative Fault Act was the product of five years of work by a special committee of the National Conference of Commissioners on Uniform State Laws. It was approved by the National Conference in 1977, with one amendment in 1979. The Commissioners' Prefatory Note states:

"Careful consideration has been given to all potential problems, and specific provisions are made for most of them."

In his comprehensive treatise on *Comparative Fault*, Judge Henry Woods states:

"Sections 1–6 of the Uniform Comparative Fault Act on the whole are superior to any existing comparative negligence statute." Woods, *Comparative Fault*, (Lawyers Coop. & Bancroft-Whitney, 1978) § 22:12, p. 420.

The Uniform Comparative Fault Act with Commissioners' Comment provides appropriate guidance where suitable. Those instances where it is not suitable can be decided on a case-by-case basis.

The Uniform Act has the salutary effect of reducing complicated legal theories regarding types and degrees of fault to relatively simple factual determinations. As stated by Judge Woods, "This is a great step forward." Woods, *Comparative Fault, supra*, § 22:12, p. 420. Three states, Washington, Minnesota, and now Missouri, have already gone to the Uniform Act as a model. If there can be an advantage to our being among the last to adopt comparative negligence, it should be the advantage of being able to use the broad experience provided by our predecessors to point the way to the best solutions available.

VANCE, Justice, dissenting.

In my view, the majority opinion does not construe or interpret the law, it invades the province of the General Assembly and enacts into law a sweeping revision of an established rule of law which has existed for a hundred years and which has been affirmed and reaffirmed many times during that span of years.

Whether this Commonwealth should adopt a rule of comparative negligence is essentially a matter of public policy, and I believe it beyond argument that the determination of public policy is generally a legislative prerogative.

If there is no declared legislative policy, the courts, of necessity, find it necessary on occasion to proclaim policy to resolve disputes. Such a declaration was made by the court in 1892 when it determined that if a plaintiff has so far contributed to his injury that but for his contributory negligence the injury would not have occurred, he cannot recover. *Newport News and M.V.R. Co., v. Dauser*, 13 Ky.L.Reptr. 734 (1892).

From 1892 to the present day it has been the law in Kentucky that no recovery can be had by a person who would not have sustained any injury except for the fact of his own negligence. As the majority opinion has pointed out, this court has considered the question of comparative negligence many times since 1892 and has always declined to adopt it. The last such holding was *Houchin v. Willow Avenue Realty Co.*, Ky., 453 S.W.2d 560 (1970).

The General Assembly has been aware of this court's declared policy all these years. The majority espouses the view that this court, having waited and grown weary of the refusal of the General Assembly to change the law, can now take matters into its own hands. But in taking the matter

into its own hands, this court, unlike the court in 1892, is not now confronted with a necessity to establish a policy where none exists, but finds itself in a position of reversing a long-established policy which the General Assembly has found satisfactory for many years.

As the majority opinion noted, a comparative negligence bill was introduced in the General Assembly in 1968, and again in most, if not all, sessions since then. Two such bills were introduced in the 1984 session. None of the bills have ever been enacted into law. The majority characterizes this as a refusal of the General Assembly to act but, in truth, it is not a refusal to act but only a refusal by the General Assembly to change the law as it presently exists.

The failure of the General Assembly to pass the comparative negligence bills which were introduced was, in itself, an action of the General Assembly. The defeat of a bill is no less an action by the General Assembly than the passage of a bill.

Consequently, it cannot be said that the General Assembly has refused to act. It appears instead that the General Assembly, presented with an opportunity on several occasions to adopt comparative negligence, declined to do so, and thereby expressed its support for the existing rule.

I do not agree, therefore, with the view that because the contributory negligence doctrine was originally adopted by the court rather than the legislature, the court is at liberty to alter the doctrine at will. The acquiescence in the policy by the legislature since 1892 and the defeat of bills designed to alter the policy constitute, at least, legislative approval and perhaps even adoption as legislative policy.

On the merits, the rule which the court today adopts is not immune to criticism, and the rule which is now abandoned is not entirely without merit. The viewpoint that one whose own carelessness and negligence is a substantial causative factor in bringing injury upon himself should be denied recovery is not entirely without merit. There is enough merit in this view that it

has been the law in this Commonwealth since 1892 and has been repeatedly affirmed by our highest court.

On the other hand, the rule now adopted is subject to the criticism that it will permit recovery by one guilty of the grossest negligence, and who is almost totally responsible for an accident. It also opens the door to jury awards based upon sympathy rather than established legal principles of liability for which there could be no effective appellate review.

In the majority of the states which have adopted comparative negligence through legislative action, the "modified" version has prevailed over the "pure" form which this court has enacted.

I agree the law should not become a stagnant pool and that over the years circumstances may change to such an extent that a rule of law, once fitting and just, is no longer appropriate under the changed circumstances. However, in matters in which there is some valid argument for each side, and especially when the issue is one of public policy, I feel the courts should exercise restraint in upsetting long-established legal principles.

The majority does not point to any circumstances that have changed since the last opinion of this court on this subject in 1970 (or for that matter since the first opinion in 1892). Perhaps the only change is a change in the membership of the court.

I am not in disagreement with the thesis upon which the majority opinion is premised. It seems just to me that in a system in which liability is based upon fault, the extent of the fault should govern the extent of the liability. Regardless of my personal preference, there is some merit to both viewpoints, and I do not believe the reasons for a change in the rule are so urgent or compelling as to justify what I consider to be an intrusion into the province of the General Assembly.

Justice Leibson, in his concurring opinion, would go further than the majority. Despite his recognition that courts do not as a general rule decide in advance collater-

al issues which may arise in the future, he would nevertheless establish the Uniform Comparative Fault Act with the commissioners' comments thereto as an appropriate guideline for determination of future collateral issues where suitable. This would provide scant guidance, however, since the question of the suitability of the proposed uniform act would have to be decided on a case-by-case basis. Nonetheless, it is our open invitation to trial judges to follow the suggested procedures in the act and the commissioners' comments.

The proposed Uniform Comparative Fault Act has not been adopted in Kentucky. Its denomination as a Uniform *Act* indicates it is intended for consideration as a legislative enactment. As such it would be subjected to legislative hearings concerning its application to a vast number of situations which may arise under the concept of comparative negligence.

This court has not had the benefit of any such hearings nor have we been briefed upon all the myriad complications which may arise. It is thus particularly inappropriate for this court to go beyond a decision of the matter at hand.

STEPHENSON, J., joins in this dissent.