RENDERED: FEBRUARY 15, 2018
TO BE PUBLISHED

Supreme Court of Kentucky

FINAL

2016-SC-000572-DG

DATE 3/8/18 Kim Redmon, DC

LATASHA MAUPIN                                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2015-CA-001259-MR
JACKSON CIRCUIT COURT NO. 10-CI-00226


ROLAND TANKERSLEY                                                 APPELLEE



**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**REVERSING AND REMANDING**


On September 12, 2009, in Jackson County, Appellant Latasha Maupin was squirrel hunting with her boyfriend, James Carpenter, on heavily wooded property owned by Carpenter's family. Maupin decided to go home early, so she started walking back to Carpenter's truck parked nearby. In doing so, she apparently walked across part of a 42-acre tract of property owned by Appellee Roland Tankersley. The evidence indicates that Maupin was walking on an old overgrown path or roadway, once used by Maupin's family to access her aunt's property with Tankersley's consent.

Near where the pathway adjoins Highway 1955, a pack of four or five dogs attacked Maupin, knocking her down, biting her, and causing substantial

injury. While she was being mauled, a motorcyclist traveling on the nearby highway saw her predicament and came to her rescue. The motorcyclist extracted Maupin from the attacking dogs and whisked her away to safety. Maupin sustained severe wounds from the dog attack, endured pain and suffering, and incurred substantial medical bills.

Maupin sued Tankersley for her injuries, relying on KRS 258.235(4). After conclusion of evidence, the trial court instructed the jury as follows:

> You will find for the Plaintiff, Latasha Maupin, under this instruction if you are satisfied from the evidence that:
>
> (A) The Defendant, Roland Tankersley, owned the dogs that caused Plaintiff's injuries; AND
> (B) The Defendant, Roland Tankersley, had reason to believe that the Plaintiff would be in the vicinity of his dogs; OR
> (C) The Defendant, Roland Tankersley, failed to exercise ordinary care to control his dogs for the safety of others, and that such failure was a substantial factor in causing Plaintiff's injuries.
>
> Otherwise, you will find for Roland Tankersley.

Maupin objected to the instructions and tendered her own, requiring an imposition of liability upon Tankersley solely by showing Tankersley's ownership of the dogs which attacked her.

The jury determined that Tankersley was the owner of the dogs that caused injury to Maupin. However, the jury also determined that Tankersley had no reason to believe Maupin would be near his dogs. Nor had he failed to exercise ordinary care to control his dogs for the safety of others. Accordingly, the jury found that he was not liable to Maupin. Maupin filed a Motion for Judgment Notwithstanding the Verdict and/or a Motion for New Trial based

2

upon improper jury instructions on liability, which the Jackson Circuit Court denied.

On September 16, 2016, the Court of Appeals affirmed the Jackson Circuit Court. The Court of Appeals held that the jury instructions properly stated the law of dog owner's liability for injuries caused by his dog. We granted review to answer one narrow question of law: whether the language of KRS 258.235(4) imposes strict liability upon the owner of a dog that attacks and injures a person.

## I. Analysis

Whether a jury instruction misrepresents the applicable law is purely a question of law, which we review *de novo*. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015). Thus, we shall review the substantive aspect of the jury instruction *de novo*. *Id.*

Additionally, we conduct *de novo* review of statutory interpretation. *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 792 (Ky. 2008). We interpret statutory terms based upon their common and ordinary meaning, unless they are technical terms. *See id.* (citing KRS 446.080(4)). We liberally construe our reading of a statute with the goal of achieving the legislative intent of the General Assembly regarding the statute's purpose. *See id.* (citing KRS 446.080(1)).

The statute in question is the progeny of years of evolution in the law of dog attacks. Without KRS 258.235(4) or its predecessor statutes, common law negligence would govern dog bite cases. Thus, the General Assembly's intent

3

in passing these statutes is clear: to mandate that dog owners are strictly responsible for injuries caused by their dogs.

From 1893 to 1918, former Ky. Stat. § 68 (later renamed 68a) prevailed over the common law "one free bite" rule. Former Ky. Stat. § 68a read as follows:

> Every person *owning*, having or keeping any dog *shall be liable* to the party injured for all damages done by such dog. But no recovery shall be had in case the person injured is, at the time, upon the premises of the owner of the dog after night, or engaged in some unlawful act in the daytime.

*Bush v. Wathen*, 47 S.W. 599, 600 (Ky. 1898) (quoting former Ky. Stat. § 68) (emphasis added).

Under former Ky. Stat. § 68a, dog owners were strictly liable for the injuries caused by their dogs. However, strict liability was not imposed if the victim was on the owner's premises at night or engaged in unlawful daytime activity.

After the repeal of former Ky. Stat. § 68a, the common law rule prevailed once again between 1918 and 1954. *Dykes v. Alexander*, 411 S.W.2d 47, 48 (Ky. 1967)). Then the General Assembly enacted former KRS 258.275(1) and KRS 235.235(4). Former KRS 258.275(1) read:

> Any *owner* or keeper of a dog which has killed or injured livestock or poultry or which has bitten such livestock or poultry so severely, as to necessitate its destruction, *or injured or damaged any person* or property, *shall be liable to the* owner of such livestock or poultry, or *person* in a civil action *for all damages and costs,* or to the Commonwealth. (emphasis added).

Until its repeal in 2004, former KRS 258.275(1) was cited by this Court as the statutory source of dog bite law in the Commonwealth. *See Johnson v.*

4

*Brown*, 450 S.W.2d 495, 495-96 (Ky. 1970); *Dykes*, 411 S.W.2d at 48. Since the repeal of former KRS 258.275(1), dog bite law has been governed by the 2004 amended version of KRS 258.235(4). It reads in pertinent part that:

> Any *owner* whose dog is found to have caused damage to a person, livestock, or other property *shall be responsible for that damage* . . . .

Under the rules of statutory construction, "shall" is mandatory language. KRS 446.010(39). Both statutes use the term "shall" in conjunction with making a dog owner "liable" or "responsible" for the victim's injuries.

We find no legal distinction between the words "liable" and "responsible." They are interchangeable. "Liable" means an entity is "[b]ound or obligated in law or equity; *responsible*." BLACK'S LAW DICTIONARY 915 (6th ed. 1990) (emphasis added). Synonymously, "responsible" is defined as "*[l]iable*; legally accountable or answerable." BLACK'S LAW DICTIONARY 1312 (6th ed. 1990) (emphasis added). Thus, a plain reading of KRS 258.235(4) and KRS 258.275(1) shows the phrases "shall be responsible for that damage" and "shall be liable . . . for all damages" carry the same meaning.

Additionally, the phrasing used in former KRS 258.275(1) and KRS 258.235(4) is nearly identical. Both statutes state that a dog "owner" as defined in KRS 258.095(5) is liable. Therefore, we may reasonably deduce from a plain reading of both statutes that the General Assembly repealed KRS 258.275(1) and amended KRS 258.235(4) to include nearly identical language. That language likewise made dog owners responsible for damages caused by their dogs. To that end, this Court has clarified that "[u]nder Kentucky's dog-

5

bite liability statutes, KRS 258.095 and .235, the owner of a dog is strictly liable for damages caused by the dog." *Benningfield ex rel Benningfield v. Zinsmeister*, 367 S.W.3d 561, 562 (Ky. 2012), and specifically held that KRS 258.235(4) "creat[es] a form of strict liability for the owner of a dog . . . ." *Id.* at 563.

Thus, we reverse the trial court based on the jury instruction given in this case. Such an instruction runs counter to our case law and the clear intent of the General Assembly. A dog owner is strictly liable for injuries caused when his dog attacks a person.

In so holding, we remain consistent with our reasoning in *Dykes* and *Johnson* insofar as those cases accounted for the negligent conduct of the respective plaintiffs.

However, the holdings in *Dykes* and *Johnson* rested upon contributory negligence rather than comparative fault. Although once a valid, complete bar to a dog attack victim's recovery, contributory negligence is no longer the law. *Hilen v. Hays*, 673 S.W.2d 713, 720 (Ky. 1984). Therefore, *Dykes* and *Johnson* are clearly distinguishable, as contributory negligence no longer bars a negligent plaintiff's recovery.

Today, we hold that a plaintiff's comparative negligence in a dog bite case may be considered in measuring the damages awarded to her. *Hilen,* 673 S.W.2d at 720; KRS 411.182(2). In analyzing Kentucky law, the federal Western District Court has noted:

6

Kentucky's comparative fault statute requires the trier of fact in '*all tort actions*' to 'consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed' when determining the percentage of the total fault properly attributed to the parties.

*Sloan v. Drury Hotels Co., LLC,* No. 5:15-CV-00061-TBR, 2016 WL 4942031, at *2 (W.D. Ky. Sept. 15, 2016) (citing KRS 411.182(2)) (emphasis in original) (discussing comparative fault's impact on damages in dog bite cases).

We agree. A comparative fault analysis of the damages in dog bite cases is mandated by KRS 411.182(2). Therefore, it is appropriate for the jury, during the calculation of damages phase, to lessen the liable owner's monetary responsibility for the victim's injuries if the facts demonstrate that the victim's own negligent or intentional acts contributed to the dog attack's occurrence.

Comparative fault serves to ameliorate the harshness of KRS 258.235(4) by permitting the jury to award damages that are mitigated in proportion to the plaintiff's amount of fault, and to award *de minimis* damages to plaintiffs who were the sole wrongdoers.

For example, a major concern of the General Assembly throughout the dog bite laws mentioned herein is the protection of livestock as well as persons. The historical emphasis has been on the agrarian interest in the protection of farm animals. It would be incredulous to believe that the General Assembly intended for the owner of trespassing cattle, who break out of a neighboring pasture and enter the dog owner's land, to be fully compensated for damages inflicted by the homestanding dog upon the intruding livestock.

7

Following the finding of liability on the part of the dog owner, a jury instruction should be given such that any comparative fault of the dog bite victim may be considered in the calculation of damages awarded.

The initial strict liability instruction from the trial court in the case at bar would require the jury to make the following finding:

> You will find for the Plaintiff, Latasha Maupin, against the Defendant, Roland Tankersley, if you are satisfied from the evidence that the Defendant, Roland Tankersley, was the owner of the dogs that inflicted the injuries described in this case upon the Plaintiff, Latasha Maupin.

If the jury finds in the affirmative, then Tankersley's liability is fixed. The trial court should then proceed to advise the jury of Maupin's duty to exercise ordinary care for her own safety with regard to the dogs. We do not define what duties that might entail. Each case will have its own facts.

Depending upon whether the jury finds any fault on the part of the plaintiff, the case will then proceed to the damages phase and apportionment of those damages according to fault.

## II.    Conclusion

For the reasons stated herein, we reverse the decision of the Court of Appeals and remand this case to the Jackson Circuit Court for a new trial consistent with this ruling.

All sitting. Minton, C.J.; Hughes, Keller, and Venters, JJ., concur. VanMeter J., concurs in part and dissents in part by separate opinion in which Wright, J., joins.

8

VANMETER, J., CONCURRING IN PART AND DISSENTING IN PART: I concur with so much of the majority opinion as analyzes the facts of this case and directs that in future cases, jury instructions should reflect concepts of comparative fault. That said, I respectfully dissent with so much of the majority opinion as reverses and remands this case for a new trial since a review of the record and trial proceedings discloses that Maupin failed to present her theory of the case to the trial court in the form of jury instructions such she should not now be heard to complain. CR[1] 51(3).

The earliest Kentucky statute addressing damages caused by dogs appears to have been passed in 1851 and has gone through many reenactments, amendments, etc.[2] These statutes consistently appear to

---

[1] Kentucky Rules of Civil Procedure.

[2] An act relating to Horses, Cattle and Dogs, stated "[s]heep-killing, ravenous, or mischievous dogs shall not be permitted to go outside of the inclosure [sic] of the owner or keeper[,]" 1851 Ky. Acts ch. LV, art. IV, §1, and its final section provided "[a]ny person injured by the horse, cattle or dog of another, such as described in this chapter, shall have redress by civil action." *Id.*, art. V, § 1.

In the 1873 General Statutes of Kentucky, the statute providing for liability for injury caused by dogs stated:

> Every person owning, having, or keeping any dog, shall be liable to the party injured for all damages done by such dog: *Provided*, No recovery shall be had in the case the person injured is, at the time, upon the premises of the owner of the dog after night, or engaged in some unlawful act in the day-time[.]

Ky. Gen. Stat. ch. 9, §10. In 1865, the General Assembly had enacted the first clause of this statute, which read, "[t]hat every person owning, having, or keeping any dog shall be liable to the party injured for all damages done by such dog[.]" 1865 Ky. Acts ch. 755, § 3. In 1872, the statute was modified to add the qualifier that

9

impose what we would consider strict liability for damages caused by dogs.[3] The purpose, "in part, was intended to obviate the difficulty which existed at common law of showing the owner's knowledge of the vicious propensities of the dog in an action for damages." *Bush v. Wathen*, 104 Ky. 548, 557, 47 S.W. 599, 601 (1898). As a result, our courts, including the majority opinion in this case, have struggled to reconcile the terms of the statute with situations in which a dog causes injury, yet the case's facts seem to reach an unfair result because the dog owner had done all that a prudent dog owner should do to prevent injury.

In *Bush*, our predecessor court, interpreting Ky. Stat. § 68, reversed a verdict in favor of a plaintiff bitten by a dog at a dog show. Although the explicit statutory exceptions to liability did not apply, *i.e*, the plaintiff was neither on the dog owner's premises at night nor engaged in some unlawful act

---

"Provided, No recovery shall be had in the case the person injured is, at the time, upon the premises of the owner of the dog after night, or engaged in some unlawful act in the day-time." 1872 Ky. Acts.

In 1893, Ky. Gen. Stat. ch. 9, § 10, was readopted practically verbatim, 1893 Ky. Acts ch. 190, § 26, and re-codified in 1894 as Ky. Stat. § 68 (later § 68a).

[3] At common law, a dog owner was not liable absent knowledge of the dog's vicious propensities, *i.e*, the "one free bite" rule. *See, e.g., Murray v. Young*, 75 Ky. (12 Bush) 337, 341 (1876) (citing *Cockerham v. Nixon*, 33 N.C. 269, 270 (1850) for the proposition that an animal's viciousness may be proven by a single act known by the owner). The facts in *Murray* concerned damages to sheep done by dogs. The Court of Appeals apparently viewed the final section of the 1873 statute to apply only to injury to persons, and not to livestock. Lewis N. Dembitz, *Kentucky Jurisprudence* (Louisville: John P. Morton & Co., 1890), 619–20.

in the daytime, the court nevertheless held that principles of contributory negligence applied to injuries inflicted by animals. *Id.*, 104 Ky. at 556, 47 S.W. at 601. The court remanded the case for a new trial for a jury to consider whether the plaintiff's contributory negligence in teasing the dog had contributed to the dog's attack. *Id.*, 104 Ky. at 558, 47 S.W. at 602.

Virtually every Kentucky opinion since *Bush*, notwithstanding the apparent legislative mandate of imposing strict liability on dog owners, has recognized exceptions to liability. *See, e.g., Johnson v. Brown*, 450 S.W.2d 495 (Ky. 1970); *Dykes v. Alexander*, 411 S.W.2d 47 (Ky. 1967) (five-year-old child bitten by dog while trespassing in dog owner's fenced-in backyard); *Wooldridge v. White*, 105 Ky. 247, 48 S.W. 1081 (1899). *Dykes* is instructive for the instant case because, although it was decided while Kentucky adhered to the concept of contributory negligence, the court explicitly stated that a child under seven cannot be contributorily negligent. 411 S.W.2d at 49. The court thus analyzed the case under precepts of premises liability and whether the child was an invitee, licensee or trespasser, and stated the prevailing rule in Kentucky, that

> [a] person who is on the premises of another, not as an invitee or a licensee or there under an implied invitation, can only be a trespasser. Where a person is on the land of another without either their knowledge or consent and is a trespasser, then the landowner owes him no duty except to exercise ordinary care to avoid injury to him after his position of peril is discovered, and he must refrain from inflicting or exposing him to wanton or wilful injury or setting a trap for him.

*Id.* (citing *Bradford v. Clifton*, 379 S.W.2d 249, 250–51 (Ky. 1964)).

11

With that historical perspective, in this case, Maupin tendered to the trial court and advocated for jury instructions that imposed strict liability on Tankersley if the jury found that that he owned the dogs that attacked Maupin. At no point did Maupin argue for jury instructions containing comparative negligence principles. And while the majority criticizes the current verdict and sets forth a rule for instructions that they should reflect comparative fault principles, Tankersley's tendered instructions did, in fact, include comparative fault principles. Tankersley argued to the trial court that it should instruct according to the rule set out in *Johnson, Dykes,* and *Carmical v. Bullock,* 251 S.W.3d 324, 326 (Ky. App. 2007).[4]

---

[4] In *Carmical,* the instructions given were, as follows:

> The Defendant, . . . is liable for damages caused by his dog to the Plaintiff, . . . if he had reason to believe that [the Plaintiff] would be in the vicinity of the animal. He further had a duty to exercise ordinary care to control his dog for the safety of others.

> You will find for the Plaintiff, . . . under this Instruction if you are satisfied from the evidence that:

> (A) The Defendant, . . . had reason to believe that the Plaintiff would be in the vicinity of his dog; OR

> (B) The Defendant, . . . failed to exercise ordinary care to control his dog for the safety of others, and that such failure was a substantial factor in causing the Plaintiff's injuries.

> Otherwise, you will find for [the Defendant].

12

In my view, the majority opinion impermissibly reverses this verdict on grounds not raised in the trial court, and does so notwithstanding the clear direction of CR 51(3):

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

In *Scudamore v. Horton,* 426 S.W.2d 142, 146 (Ky. 1968), this court posed the question as "whether [appellants] can assign one reason for objecting to an instruction in the trial court and a different one on this appeal," and held "[o]bviously, CR 51 condemns such a practice, and, in consequence, we must hold they cannot now be heard on these matters." (internal quotation omitted).

More recently, this Court delineated three circumstances as to when a tendered instruction will not fairly and adequately present the party's position as to an allegation of instructional error:

> (1) the omitted language or instruction was not contained in the instruction tendered to the trial court; *i.e.*, when the allegation of error was not presented to the trial court *at all;*

> (2) the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error; or

> (3) the tendered instruction itself was otherwise erroneous or incomplete

*Sand Hill Energy, Inc. v. Smith,* 142 S.W.3d 153, 163–64 (Ky. 2004). Maupin's tendered instructions reflected her position that a dog owner is strictly liable for damages upon proof of dog ownership. Thus, her instructions violate both

13

(1) and (3) above—the allegation of error was not presented to the trial court and her tendered instructions were erroneous. For this reason, the trial court's verdict should be affirmed.

I would affirm the Court of Appeals and the Jackson Circuit Court in all respects.

Wright, J. joins.


COUNSEL FOR APPELLANT:

Marshall F. Kaufman, III
Kerstin Schuhmann
KAUFMAN & STIGGER


COUNSEL FOR APPELLEE:

Daniel Allen Simons
Amanda Kash
SIMONS, FORE & BOWMAN, P.S.C.