William **ANDERSON**, et al., Plaintiffs,

v.

**BLACK & DECKER (U.S.), INC., Defendant.**

Civ. A. No. 83–113.

United States District Court, E.D. Kentucky, Covington Division.

Nov. 28, 1984.

Nick Benson, Walton, Ky., for plaintiffs.

R. David Clark, Clark, Ward, Stuart & Hopgood, Lexington, Ky., for defendant.

## OPINION

BERTELSMAN, District Judge.

This products liability case presents the court[1] with an important issue of first impression in Kentucky products law: whether the decision of the Supreme Court of Kentucky in *Hilen v. Hays*, 673 S.W.2d 713 (Ky.1984), adopting comparative negligence for Kentucky, applies to products liability cases in which the cause of action arises after the effective date of the Kentucky Products Liability Act, KRS 411.300, et seq.[2]

The case is before the court on the parties' pretrial requests for conflicting instructions, the plaintiff seeking a comparative negligence instruction and the defendant requesting an instruction that contributory negligence, if established, is a complete bar. The facts are simply stated.

This is a personal injury, products liability action. In his complaint filed April 6, 1983, plaintiff William Anderson claims that his left forearm was cut severely on the base of a 10 inch radial arm saw manufactured and distributed by defendant Black & Decker. He alleges defective design, failure of adequate warnings, breach of implied warranty that the saw was fit for its intended use, and a lack of knowledge on his part of any defect in the product.

This case was originally filed in Boone Circuit Court. The case was removed to this court by defendant. In its answer defendant asserted the affirmative defense of plaintiff's contributory negligence.

Kentucky enacted its Product Liability Act in 1978. The background of its passage will be described later. Section 411.320(3) of that Act, quoted below, provides that contributory negligence is a complete defense in product liability cases.

In *Hilen v. Hays, supra,* the Kentucky Supreme Court adopted comparative negligence. In its rationale, the court noted that contributory negligence as a bar to recovery in Kentucky was a court-made law which originated after the constitutional provision which adopted as the law of this state the common law of England. 673 S.W.2d at 715. It stated that "at present count thirty-two states, Puerto Rico, and the Virgin Islands have adopted comparative negligence or comparative fault by statute." *Id.* at 716. It also noted that nine other states have refused to wait for their legislatures to act and have adopted comparative negligence by judicial decision. *Id.* at 716. It stated that in the interests of justice it deemed it appropriate to adopt

---

**1.** This court has jurisdiction by diversity of citizenship. 28 U.S.C. § 1332.

**2.** Plaintiff relies on *Lewis v. Inland Steel Co.,* —— S.W. —— No. 83–CA–2345–MR (Ky.App. October 12, 1984), which applied comparative negligence in a products case, but the accident in that case occurred prior to the 1978 Kentucky Product Liability Act, which, therefore, was not applicable.

comparative negligence, and abolished the doctrine of contributory negligence as a complete bar to recovery in cases governed by the common law. *Id.* at 717–719.

In the course of its opinion it observed as to KRS 411.320:

"It may be arguable that the statute is capable of being construed as providing for contributory negligence as a complete defense to a products liability action *(a question which remains open for a case in point), but from its background it is clear that the legislative purpose was to deal with the availability of contributory negligence as a defense in products cases and not with whether contributory negligence should result in a complete bar or proportionate recovery.* " (Emphasis Added)

*Id.* at 715. The court went on to adopt the pure form of comparative negligence. *Id.* at 720. The application of pure comparative negligence was taken directly from the Uniform Comparative Fault Act § 2. *Id.* The court then noted "We adopt only this part of the Uniform Comparative Fault Act which is directly applicable to this case and we express no opinion as to future applications to any portion of the Act not quoted expressly in this opinion." The court made comparative negligence applicable to all appropriate cases tried or retried after the date of the filing of the *Hilen* opinion and all cases pending, including appeals, in which the issue had been preserved. *Id.*

The history of products law in Kentucky may be succinctly summarized. In 1965, Kentucky's highest court adopted the doctrine of strict liability in products cases. *Dealers Transport Co. v. Battery Distributing Co.,* 402 S.W.2d 441 (Ky.1965). Generally in the application of the doctrine to various situations the Kentucky courts have followed the guidelines set forth in Restatement (Second) of Torts, § 402A, et seq. (1965). *See, e.g., Post v. American Cleaning Equipment Corp.,* 437 S.W.2d 516 (Ky.1968) (warnings); *Jones v. Hutchinson Mfg. Inc.,* 502 S.W.2d 66 (Ky.1973) (design defect); *Cox v. General Motors Corp.,* 514 S.W.2d 197 (Ky.1974) (abuse of

product); *Embs v. Pepsi-Cola Bot. Co. of Lexington,* 528 S.W.2d 703 (Ky.1975) (applicability to bystanders); *Nichols v. Union Underwear Co., Inc.,* 602 S.W.2d 429 (Ky. 1980) (provides currently used definition of "unreasonably dangerous"). *See also, C & S Fuel, Inc. v. Clark Equipment Co.,* 552 F.Supp. 340 (E.D.Ky.1982) (substantial alteration, warnings, design defect).

Prior to the adoption of the Product Liability Act, the Kentucky state courts had never been called upon to decide whether contributory negligence not amounting to assumption of the risk of the product defect or abuse of the product would be a bar to recovery in an action based on strict liability, although *Penker Construction Co. v. Finley,* 485 S.W.2d 244, 250 (Ky. 1972) implied that negligence amounting to misuse of product would be a complete bar. *See also, Hercules Powder Co. v. Hicks,* 453 S.W.2d 583, 591 (Ky.1970) (probably involved assumption of risk).

Certainly, at the time of the passage of the Product Liability Act in 1978 it was a realistic possibility that the Kentucky Supreme Court would follow Restatement (Second) of Torts, § 402A, *Comment n,* which provided that the only negligence which would be a bar in product liability cases would be of the kind amounting to assumption of the risk of the hazards caused by the product defect.

This, then was the state of the law at the time of the passage of the Products Liability Act in 1978. This is extremely important in resolving the issue now before the court.

█ For those not familiar with it, the Kentucky Products Liability Act is set out in an appendix to this opinion. As comprehensive acts go, it is on the brief side. The intent of the legislature in enacting it is clear. Rightly or wrongly, wisely or unwisely, whether influenced by manufacturers' and insurance lobbies or not, the clear intent of the legislature was to restrict liability in products cases. Thus, it limited the liability of retailers. KRS 411.340. It provided that alteration of product was a complete defense. KRS 411.320(1), (2). It

at least attempted to provide a presumption of non-defectiveness to products in use for five years. KRS 411.310(1).[3] And in language as clear and unambiguous language as the drafters' skills could muster,·it provided with regard to contributory negligence in products cases:

"In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective." KRS 411.320(3).

 Plaintiff here now asks the court to read this statute as meaning that whatever rule of contributory negligence is currently in use in the Commonwealth shall be used in product cases. He argues that such judicial revision of the statutory language is justified on the ground that it would implement the will of the legislature. Bound by clear precepts of statutory construction in use in this Commonwealth, this court cannot agree.[4] This court can only conclude that the Kentucky Supreme Court would follow its own precepts of statutory construction and uphold the plain meaning of the statute, despite the dictum in *Hilen v. Hays*, quoted above.

Justice Leibson, who was the author of the comparative negligence decision, speaking for a unanimous court, stated most emphatically as recently as ten months ago:

"We have a duty to accord words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. *Department of Revenue v. Greyhound Corp.*, Ky., 321 S.W.2d 60 (1959). A legislature making no exceptions to the positive terms of a statute is presumed to have intended to make none. *Commonwealth v. Boarman*, Ky.App., 610 S.W.2d 922 (1980)."

*Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky. 1984).

In *Commonwealth v. Boarman*, 610 S.W.2d 922, 924 (Ky.App.1980), the Kentucky Court of Appeals case cited by Justice Leibson with approval, the intermediate court had stated in even stronger language:

"A legislature making no exceptions to positive terms of the statute, is presumed to have intended to make none. *Hawley Coal Co. v. Bruce*, 67 S.W.2d 703, 252 Ky. 455 (1934). It is to be presumed, also, that the legislature is acquainted with the law, that it has knowledge of the state of the law on subjects on which it legislates, and that it is informed of previous legislation and the construction that previous legislation has received. *Button v. Hicks*, 176 S.W.2d 112, 296 Ky. 163, 150 A.L.R. 779 (1943)."

*See also, Manning v. Kentucky Bd. of Dentistry*, 657 S.W.2d 584 (Ky.App.1984).

 These cases were adhering to the plain meaning rule, which is well summarized in a standard work on statutory construction:

"One who contends that a provision of an·act must not be applied according to the natural or customary purport of its language must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning. *If the language is plain, unambiguous and uncontrolled by other parts of the act or.other acts upon the same subject the court cannot give it a different meaning.*" *Sutherland, 4th Ed., Statutory Construction*, § 46.01. (Emphasis Added).

---

3. What this statute adds to the ordinary burden of proof is not clear.

4. In this diversity case, of course we must apply state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

None of these factors exists here. Under the plain meaning rule statutes ordinarily apply to unforeseen developments unless such application would lead to an absurd result. *Id.* § 49.02.

It cannot be said that having contributory negligence as a complete bar in product cases, while comparative negligence is applied in other tort cases is an absurdity, whether one might prefer another view or not. An argument could certainly be made that, since a products liability defendant is saddled with the heavy burden of strict liability, the plaintiff as a *quid pro quo* should bear the burden of the traditional doctrine of contributory negligence. This is the statutory model and only the legislature can modify it.

■ Further, since the legislature is presumed to know the state of the law at the time of the enactment of a statute, this court must assume that it was aware at the time of the enactment of the Products Liability Act that the adoption of comparative negligence was being discussed in Kentucky and was even being applied in some contexts such as apportionment among joint tortfeasors. KRS 454.040. *See D.D. Williamson & Co. v. Allied Chemical Co.,* 569 S.W.2d 672 (Ky.1978); *Orr v. Coleman,* 455 S.W.2d 59 (Ky.1970).

Although the axiom that the legislature is aware of judicial interpretations of statutes may sometimes be based on a legal fiction, that is probably not the case here.

The Act was advocated and opposed by personal injury lawyers, many of whom undoubtedly served in the legislature. Therefore, the court is of the opinion that to many members of the legislature at least the later adoption of comparative negligence by the court was not an unforeseen development. Current applicability of comparative negligence among joint tortfeasors and the possibility of its adoption in lieu of contributory negligence was discussed by Judge James Park in 1975 in a widely-read article. *See* Park, *Comparative Negligence is Here Now?,* 39 *Kentucky Bench & Bar* 18, 21. Justice Leibson refers to a growing trend toward comparative negligence beginning long before 1978, including the introduction of bills into "most, if not all" sessions of the General Assembly since 1968. *Hilen v. Hays,* 673 S.W.2d at 717. Therefore, the court believes that in 1978 the legislature had not only presumed, but actual knowledge of the emerging doctrine of comparative negligence.

Even if the court believed judicial adoption of comparative negligence in Kentucky was unforeseen, and was inclined to depart from Kentucky precedent by ignoring the plain meaning rule, it could do so only under the aegis of more faithfully implementing the legislative intent. *See,* K. Griffith, *Judge Learned Hand and the Role of the Federal Judiciary,* 165–169 (1973).

Plaintiff's attempt to trim his sails to the breezes of legislative intent founders his vessel upon a rocky lee shore, for the fact is that the undoubted intent of the legislature in passing the Products Liability Act was to *restrict* liability. There is no indication in the Act, or elsewhere, that if aware of the present situation the legislature would have done other than it did.

In conclusion, the court holds that KRS 411.320(3), being clear and unambiguous and its application according to its terms not yielding an absurd result, must be applied according to its plain meaning. The defendant's motion for an instruction that contributory negligence is a complete bar in this case, if supported by the evidence, will be granted.

IT IS SO ORDERED.

## APPENDIX

## PRODUCT LIABILITY ACT

**411.300 Definitions**

(1) As used in KRS 411.310 to 411.340, a "product liability action" shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, as-

sembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product.

(2) As used in KRS 411.310 to 411.340, a "plaintiff" shall mean a person asserting a claim and, if said claim is asserted on behalf of an estate, "plaintiff" shall include plaintiff's decedent.

HISTORY: 1978 S 119, § 2, eff. 6–17–78

### 411.310 Presumptions in product liability actions

(1) In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture.

(2) In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured.

HISTORY: 1978 S 119, § 3, eff. 6–17–78

### 411.320 Circumstances under which defendant is liable

(1) In any product liability action, a manufacturer shall be liable only for the personal injury, death or property damage that would have occurred if the product had been used in its original, unaltered and unmodified condition. For the purpose of this section, product alteration or modification shall include failure to observe routine care and maintenance, but shall not include ordinary wear and tear. This section shall apply to alterations or modifications made by any person or entity, except those made in accordance with specifications or instructions furnished by the manufacturer.

(2) In any product liability action, if the plaintiff performed an unauthorized alteration or an unauthorized modification, and such alteration or modification was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective.

(3) In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective.

HISTORY: 1978 S 119, § 4, eff. 6–17–78

### 411.330 Admissibility of certain evidence

In any product liability action, evidence of any alteration, modification, improvement, repair or change in or discontinuance of the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instruction, marketing, advertising, packaging, or labeling of a product, whether made by the defendant or any other person or entity after the date of manufacture, shall be admissible in evidence only after the same has been offered to the court in a hearing out of the presence of the jury and the court has ruled that the evidence is relevant and material.

HISTORY: 1978 S 119, § 5, eff. 6–17–78

### 411.340 When wholesaler, distributor or retailer to be held liable

In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distribu-

**1304**

tor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

HISTORY: 1978 S 119, § 6, eff. 6–17–78

### 411.350 Short title

KRS 411.300 to 411.340 shall be known as the "Product Liability Act of Kentucky."

HISTORY: 1978 S 119, § 1, eff. 6–17–78