**KANAWHA STEEL & EQUIPMENT COMPANY and Giant Wholesale Grocery Company, Plaintiffs,**

**and**

**Pepsi Cola Bottling Company of Corbin, Intervening Plaintiff,**

v.

**DORSEY TRAILERS, INC., Defendants and Third-Party Plaintiff,**

v.

**HUTCHENS INDUSTRIES, INC., Third-Party Defendant.**

Civ. A. No. 83–33.

United States District Court, E.D. Kentucky, at London.

June 8, 1987.

---

Wyatt, Tarrant & Combs by David C. Long, Lexington, Ky., for plaintiffs.

Hays, Moss and Lynn by Catherine R. Meng, Lexington, Ky., for intervening plaintiff.

Hamm, Milby & Ridings by Kenneth H. Gilliam, London, Ky., for defendant and third-party plaintiff.

Gullett, Combs, Holliday & James by G. Edward James, Hazard, Ky., for third-party defendant.

## OPINION

GILMORE, District Judge.[*]

This action arises out of a truck accident that occurred on April 7, 1981 on US Highway 25–E in Knox County, Kentucky involving Kanawha Steel & Equipment Company, Giant Wholesale Grocery Company, and Pepsi Cola Bottling Company of Corbin.

A trailer-tractor rig owned by plaintiff Kanawha Steel & Equipment Company was travelling north when the rear set of wheels of the trailer broke loose and crossed the roadway into the path of a truck owned by plaintiff Giant Wholesale Grocery Company, which was southbound. The Giant Wholesale Grocery Truck collided with the wheels and turned over across the highway into the path of the truck owned by intervening plaintiff Pepsi Cola Bottling Company of Corbin, which was northbound. The driver of the Pepsi Cola Bottling Company truck attempted to avoid a collision between his vehicle and the Giant Wholesale Grocery Company truck, but was unable to do so.

This action was started by plaintiffs Kanawha Steel & Equipment Company and Giant Wholesale Grocery Company against defendant Dorsey Trailers, the manufacturer of the trailer involved in the incident. By intervening complaint, Pepsi Cola Bottling Company of Corbin seeks to recover damages sustained to its truck and cargo as a result of the incident from defendant Dorsey Trailers, Inc., claiming negligence in the design, manufacture, construction, and inspection of the trailer in question, and also on the theory of strict liability for the manufacture of a trailer in a defective condition.

By amended complaint, the intervening plaintiff added as a defendant Hutchens Industries, Inc. Intervening plaintiff seeks damages from Hutchens Industries as the manufacturer of the suspension assembly incorporated into the trailer by Dorsey on the grounds of negligence and strict liability in the manufacture of the suspension. By cross-claim, intervening plaintiff seeks to recover damages from plaintiff Kanawha Steel & Equipment Company on the grounds that the wheels separated from the trailer as the result of the negligent maintenance, alteration and/or operation of the trailer by Kanawha Steel & Equipment Company.

In addition, Dorsey has pled sole negligence and contributory negligence against Kanawha, and filed a third party complaint against Hutchens, claiming Hutchens is liable for indemnity and contribution.

All parties have stipulated to damages as a result of the accident. Pepsi Cola Bottling Company sustained damages to its truck and cargo in the amount of $14,649.77. Kanawha Steel & Equipment Company sustained damages in the amount of $2,858.73 to its trailer, plus a wrecker service charge in the amount of $210. The Giant Wholesale Grocery Company tractor

---

[*] District Judge, United States District Court, Eastern District of Michigan, sitting in Eastern District of Kentucky by designation.

sustained damages in the amount of $25,524.48, and the Giant Wholesale trailer sustained damages in the amount of $20,756.62. Additionally, Giant Wholesale Grocery Company incurred wrecker charges in the amount of $2,183 and cargo damage in the amount of $6,339.81. The stipulation as to damages provides that all damages were the direct and proximate result of the accident of April 7, 1981.

It is further undisputed that none of the drivers of the vehicles involved in the accident was negligent in the operation of their respective vehicles. Accordingly, the basic issue before the Court is whether the rear set of wheels separated from the Kanawha Steel trailer as a result of the negligence of defendant Hutchens Industries, Inc. and Dorsey Trailers, Inc., and/or the plaintiff Kanawha Steel & Equipment Co., or as the result of the combined negligence of one or more of these parties.[1]

### I

In the two day trial of this matter, Richard Baldwin testified that he was driving the flatbed trailer owned by Kanawha, and manufactured by Dorsey, on April 7, 1981 when, without prior warning, it began to shake and jerk, and the rear axle became detached. Baldwin stated that the trailer, having a 60,000 pound capacity, had never been overloaded.

James Shearer was plaintiffs' expert witness. He was thoroughly qualified. Initially, he conducted a visual examination of the trailer. He then cut off the left and right center bracket and radius rod, and took them to his laboratory. He explained that the center bracket's function is to connect the wheels to the frame of the body and to transfer and equalize the load, absorbing the motion caused by unevenness and irregularities in the roadbed.

Based on his inspection of the parts, Shearer concluded that the right side of the center bracket failed first, then the left side tore out, causing the radius rods to give out. He observed that the right center bracket had been opened for some time, and exhibited heavy surface corrosion and cracks all over the bracketry, mainly in the welds. He felt this evidenced fatigue failure, and stated that examination of the right bracket showed that the weld had not penetrated the bracket in various places.

As a consequence of the insufficient penetration of the weld, Shearer said the open portion acted like a bellows. Normal starts and stops, and forward and backward motion, of the tractor-trailer caused the gap to open and close. This cyclic stress gave rise to a "fatigue crack," which began developing the first day the trailer was on the road. The fatigue failure was progressive until the day of the accident—April 7, 1981—when the bracket finally failed altogether.

Shearer emphasized that the fatigue crack began on the inside and worked its way out, and therefore was not easily visible.[2] He testified that normal maintenance requirements of the bracket involved only visual inspection. In his opinion, the welding performed by Hutchens in manufacturing the center bracket fell below acceptable

---

1. One law firm, Wyatt, Tarrant and Combs, of Lexington, Kentucky, represents both plaintiffs Kanawha Steel & Equipment Company and Giant Wholesale Grocery Company. The apparent conflict here was called to the attention of counsel at trial, in view of the fact Giant Wholesale Grocery conceivably could have an action against Kanawha Steel and Equipment, and both parties are represented by the same attorney. After trial, it was disclosed that Kanawha and Giant had entered into an agreement to the effect that Kanawha would pay Giant if the trial resulted in a finding that Kanawha alone was responsible for the accident. Otherwise, all parties would pay Giant proportionately to their culpability.

2. Shearer also testified that he had been able to eliminate other potential causes of the accident. By contacting certain large companies, he discovered that the life expectancy of this center bracket was about 15 to 20 years. It is undisputed that this bracket had been in use only four years and several months. Also, he determined there had been no tire blowout, the bearings were in good shape, the remainder of the suspension system passed muster, and he found no impact damage from an unrelated accident that had occurred several weeks earlier. He noted there was evidence of some repairs on the right center bracket, but opined these repairs merely forestalled the accident, and could not have been a precipitating factor.

manufacturing standards in that there should have been better penetration.

Roy Belcer was Dorsey's vice-president in charge of manufacturing at the time that Dorsey manufactured and sold the trailer to Kanawha. He explained that Dorsey bought the assembled suspension from Hutchens, incorporated it into the trailer, did periodic inspections along the line, and performed a final inspection at the end, before selling the finished product. Dorsey did not manufacture any of the suspension parts.

Testifying as an expert for Dorsey, Belcer opined that the right hanger failed from abuse and modification. He felt it had been subject to severe operations, overloading, severe twisting, and welding repair performed neither by Dorsey nor Hutchens. Belcer found welds put on cracks that were not properly prepared. Instead, said Belcer, the entire assembly should have been replaced. Belcer estimated that replacing the part would cost less than $400 with labor. However, Belcer admitted that a small company like Kanawha, who owns just three trailers, would generally try to repair a part. He also conceded that Dorsey supplied Kanawha with a maintenance booklet that instructed Kanawha to conduct a semi-annual visual inspection, but did not warn against rewelding the center bracket.

Focusing on the subject of abuse, Belcer said the trailer had been loaded with more than 65,000 pounds and run over rough terrain. On cross-examination, he admitted that in his opinion "abuse" included hitting a large pot hole or inadvertently veering onto the shoulder of the road. He also conceded that there was no evidence of any damage to the center bracket as a result of the prior accident.

William Brazeal, Hutchens' Vice-President of Manufacturing, also testified. He agreed Hutchens had welded in the crucial area. Brazeal admitted Hutchens would have wanted the weld to penetrate deeper than what was revealed in the cross-section analysis, and agreed that Hutchens would expect the center bracket to last longer than five years.

Blake Wood testified as an expert witness on behalf of Hutchens. He testified that 100 per cent penetration of the weld was unnecessary. Wood said 50 per cent would suffice. He felt the micrograph revealed 40 percent penetration, meaning it was 20 per cent undersized. Wood said this would not, in and of itself, have caused the failure, but that abuse and overloading contributed. Wood felt that the trailer showed signs of abuse and overloading.

Based on the foregoing evidence, the Court finds:

1. Dorsey manufactured a trailer bearing serial number 124580, which was delivered to Kanawha Steel in 1977.

2. In the manufacture of the trailer, Dorsey incorporated suspension parts for the rear axles, including center suspension brackets, manufactured by Hutchens Industries. The life expectancy of these center brackets is at least 16 years.

3. The suspension system is critical to safe operation of a trailer, and an accident will very possibly occur in the event of failure of the suspension system.

4. On April 7, 1981, less than five years after the manufacture of the trailer, while travelling on U.S. 25 E in Knox County, Kentucky, the rear axle from the Kanawha Steel trailer broke loose from the trailer.

5. When the rear axle of the Kanawha Steel trailer separated from the trailer, it crossed into the path of the oncoming Giant Wholesale tractor-trailer and caused it to overturn. The vehicle owned and operated by Pepsi-Cola Bottling Company of Corbin collided with the Giant Wholesale tractor and trailer.

6. None of the drivers of the vehicles was negligent.

7. Kanawha exercised reasonable care in the operation and maintenance of the subject trailer. Kanawha did not abuse or overload the trailer.

8. Any repair welds on the center bracket were performed by Kanawha with reasonable care, and in such a manner as would be expected of a company owning a small fleet of trucks. Any such repairs did

not constitute a substantial change to or modification of the suspension system.

9. Defendant Hutchens' methods of welding in their manufacturing process conformed to industry practices. In general, Hutchens exercised ordinary care in manufacturing suspension systems.

10. The penetration of the weld performed by Hutchens on the center bracket incorporated into the trailer sold to Kanawha by Dorsey was significantly inadequate, making it inordinately susceptible to fatigue failure. As a result of the insufficient penetration of the weld, the center suspension bracket was greatly weakened, significantly increasing the chance of failure under normal operating circumstances.

11. The center bracket manufactured by Hutchens and the trailer manufactured by Dorsey were at the time of manufacture and sale in a defective condition, unreasonably dangerous to the user, consumer, or bystander.

12. Had defendant Hutchens been fully aware of the risk of failure of the center bracket that it sold to Dorsey for incorporation into trailer # 124580, Hutchens would not have allowed that particular product to enter the stream of commerce.

13. Dorsey's methods of manufacturing trailers, including the performance of inspections along the line and at the end of the manufacturing process, constituted an exercise of reasonable care.

14. Had Dorsey known that the weld on the center bracket was deficient, Dorsey would have rejected it, and that particular trailer would never have been manufactured and introduced into the stream of commerce.

## II

■ Liability here must be based on products liability law because there was insufficient evidence to prove that either Hutchens or Dorsey knew or should have known of a defect in their respective products (the suspension system and the trailer) at the time either defendant released its product into the stream of commerce. Also, as indicated above, intervening plaintiff Pepsi Cola Bottling Co. and defendant Dorsey failed to carry their respective burdens of proof that plaintiff Kanawha negligently acted or failed to act in such a way as to contribute to the occurrence of the accident.

A products liability action against the manufacturer requires the plaintiff to prove there existed a defect in the product, making it unreasonably dangerous, which existed at the time the product entered the stream of commerce, and which caused injury to the plaintiff. *Calhoun v. Honda Motor Company, Ltd.*, 738 F.2d 126, 129–30 (6th Cir.1984). As explained in another case interpreting Kentucky law, under a theory of strict liability a manufacturer "is legally responsible for risks which could not have been known or appreciated at the time of manufacture, but came to light later, ..." *C & S Fuel, Inc. v. Clark Equipment Co.*, 552 F.Supp. 340, 343 (E.D. Ky.1982). This contrasts with a negligence theory under which the defendant can be held liable only for what he knew or should have known at the time of distribution.

■ Under the Kentucky Product Liability Act, K.R.S. 411.300 *et seq.*, there is a presumption, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective. K.R.S. 411.310(2). Suffice it to say that the testimonies of Shearer, for plaintiffs, and Belcer, for defendant Dorsey, adequately rebutted this presumption.

Section 411.320 provides several potential defenses for the manufacturer. Subsection (1) states the manufacturer of a defective product is liable only for "damage that would have occurred if the product had been used in its original, unaltered and unmodified condition." Product alteration does not include ordinary wear and tear. Furthermore, under subsection (2), if the plaintiff altered the product and the alteration was a substantial cause of the damage, then "the defendant shall not be liable whether or not said defendant was at fault or the product was defective." Finally, under subsection (3), the doctrine of contributory negligence thrives in Kentucky's products liability law. In *Reda Pump Co.*

*v. Finck,* 713 S.W.2d 818 (Ky.1986), the Kentucky Supreme Court held that, pursuant to K.R.S. 411.320(3), a plaintiff's contributory negligence that is a substantial cause of the damage to him will absolutely bar plaintiff from recovering damages under a theory of strict product liability.[3] *See also, Anderson v. Black & Decker, Inc.,* 597 F.Supp. 1298 (E.D.Ky.1984).

■ First, as indicated above, the Court accepts the testimony of the expert witnesses for plaintiffs and defendant Dorsey tending to prove that the cause of the failure of the suspension system was the insufficient penetration of the original weld on the center bracket. Furthermore, the Court accepts as credible the testimony of plaintiffs' expert Shearer that a fatigue crack began developing from the first day the trailer was on the road, and an accident was simply waiting to happen. Therefore, the Court finds that plaintiffs and intervening plaintiff have satisfied subsection (1) of Section 411.320 by showing that damage would have occurred if the trailer and the suspension system were used in an unmodified condition.

■ Second, while there was some indication that Kanawha had altered the center bracket by applying repair welds, given the testimony of Shearer as to the cause of the failure of the suspension system, the Court must find that these repair welds were not a "substantial cause of the accident." Therefore, defendant Dorsey and third party defendant Hutchens cannot avoid liability under Section 411.320(2).

■ Finally, defendant Dorsey and intervening plaintiff Pepsi failed to prove by a preponderance of the evidence that Kanawha negligently acted or failed to act in such a way as to contribute to the occurrence of the accident. There was testimony that, instead of applying repair welds to the center bracket, the better course would have been to replace the center bracket at a cost of approximately $400. However, plaintiffs' expert Shearer testified that repair welding would be standard practice for an operation the size of Kanawha's. Furthermore, Belcer, testifying as an expert for defendant Dorsey, admitted that Dorsey supplied Kanawha with a maintenance manual instructing Kanawha to conduct semi-annual visual inspections, but not warning against rewelding the center bracket. In assessing whether Kanawha was contributorily negligent, the sufficiency of the warning to Kanawha of potential dangers is relevant. *Post v. American Cleaning Equipment Corp.,* 437 S.W.2d 516, 521 (Ky.Ct.App.1969); *Burke Enterprises, Inc. v. Mitchell,* 700 S.W.2d 789, 793 (Ky.1985). The Court finds Kanawha acted reasonably prudently, and therefore defendant Dorsey and third-party defendant Hutchens cannot avoid liability under Section 411.320(3) by asserting the bar of contributory negligence.

■ Defendant Dorsey has suggested that it may escape liability under Section 411.340, which essentially provides that, where the manufacturer is subject to the court's jurisdiction, "a wholesaler, distributor, or retailer who distributes or sells a product, ... shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product ..." The Court must reject this defense for two reasons. First, Dorsey is not a wholesaler, distributor, or retailer who merely distributes or sells Hutchens' product. Instead, Dorsey manufactures trailers incorporating suspension systems purchased from its supplier, Hutchens. Second, under strict products liability law in Kentucky, a manufacturer is liable for damages caused by a manufacturing defect even if the defect can be traced to a supplier. *Dealers Transport Co. v. Battery Distributing Co.,* 402 S.W.2d 441 (Ky.1965); *Kroger Co. v. Bowman,* 411 S.W.2d 339 (Ky.1967).

■ Defendant Dorsey has also suggested that plaintiff and intervening plaintiff, by relying heavily on expert testimony, have failed to carry their burden of proof by a preponderance of the evidence. Defendant cites *Moore v. Moore,* 290 Ky. 715, 162 S.W.2d 547, 550 (1942) for the proposi-

---

3. The Supreme Court so held, notwithstanding that in *Hilen v. Hays,* 673 S.W.2d 713 (Ky.1984), the court adopted a comparative negligence rule in ordinary negligence cases.

tion that "Expert testimony is regarded by the law as the weakest character of testimony ..." Without commenting on the validity of this proposition, the Court finds more to the point the following statement in another case defendant cites:

> Opinion evidence or conclusion of expert witnesses will not control when not supported by the proven facts and a directed verdict is proper if the expert testimony forms the foundation of such a case in court.

*Kentucky Trust Co. v. Gore*, 302 Ky. 1, 192 S.W.2d 749, 752 (1946). Simply stated, Shearer's testimony that an insufficient weld on the center bracket caused the suspension system to fail and the resulting accident was adequately supported by proven facts in the form of testimony concerning his investigation and the photomicrograph of a cross-section of the center bracket prepared by defendant Dorsey. Even the testimony of Dorsey's expert lent support to Shearer's testimony. Furthermore, it is obvious that a products liability case such as this one will turn largely on the testimony of experts.

■ The final matter to address is defendant Dorsey's third-party complaint against Hutchens seeking contribution or indemnification. Under Kentucky law, this Court concludes that defendant Dorsey is entitled to contribution from third-party defendant Hutchens, but not to full indemnification. A joint tort-feasor enjoys a right to indemnity:

> Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, ...

*Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165, 167 (1949). *See also, Kentucky Utilities Co. v. Jackson County Rural Electric Cooperative Corp.*, 438 S.W.2d 788, 790 (Ky.Ct.App. 1969); *Nally v. Boop*, 428 S.W.2d 607, 609 (Ky.Ct.App.1968). However, where the joint tort-feasors are equally at fault, there exists no right to full indemnification. *Brown Hotel, supra*, 224 S.W.2d at 166.

In *Nally v. Boop, supra,* the court distinguished the right to contribution from the right to indemnity. There, plaintiff sued the driver and the owner of the car in which he was a passenger, as well as the driver of the car that struck the car in which he was a passenger. The court stated that, under such a fact situation, there might exist a right to contribution among the three defendants, but there would be no right to indemnity. The Court indicated this was because, were the jury to find all defendants liable, it could not be said that the defendants were "not concurrently joining in the act" that created a hazard to plaintiff. *See, Brown Hotel, supra.*

Similarly, in the case at bar the Court concludes that defendant Dorsey and third party defendant Hutchens concurrently joined in the act creating a hazard to plaintiffs and intervening plaintiff. As manufacturers of the trailer and the suspension system, respectively, Dorsey and Hutchens are equally liable to Kanawha, Giant Wholesale, and Pepsi. Therefore, while Dorsey may seek 50 per cent contribution from its fellow tort-feasor Hutchens, it enjoys no right to full indemnification.

Based on the foregoing discussion, the Court concludes:

1. The defective condition of the center bracket manufactured by Hutchens Industries at the time it was placed on the market made it unreasonably dangerous to the user, consumer, or bystander.

2. The defective condition of the center bracket was a proximate cause of the damage to plaintiffs and intervening plaintiff.

3. By incorporating the defective center bracket into the trailer it manufactured and sold to Kanawha, Dorsey placed a product into the stream of commerce that was unreasonably dangerous to the user, consumer, or bystander.

4. The defective condition of the trailer was a proximate cause of the damage to plaintiffs and intervening plaintiff.

5. Damage to users, bystanders, or consumers would have occurred if the suspen-

sion system and the trailer were in their unmodified conditions. Therefore Dorsey and Hutchens are not entitled to the defense under K.R.S. 411.320(1).

6. Any alteration to the suspension system or the trailer by Kanawha was not a substantial cause of the damage. Therefore Dorsey and Hutchens are not entitled to the defense under K.R.S. 411.320(2).

7. Kanawha did not negligently act or fail to act, contributing to the cause of the damage. Therefore Dorsey and Hutchens are not entitled to the defense under K.R.S. 411.320(3).

8. Dorsey is strictly liable to Kanawha for damages, as stipulated, in the amount of $3,068.73, plus interest.

9. Dorsey is strictly liable to Giant Wholesale for damages, as stipulated, in the amount of $54,803.91, plus interest.

10. Dorsey and Hutchens are jointly and severally liable to Pepsi for damages, as stipulated, in the amount of $14,649.77, plus interest.

11. Dorsey may obtain 50 per cent contribution from Hutchens in the cases of Kanawha and Giant Wholesale.

A judgment embodying the findings in this opinion may be presented.