983 F.2d 1071
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wesley WALL, Plaintiff-Appellant
v.
FORD MOTOR COMPANY, Defendant-Appellee
 No. 91-6385.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and HIGGINBOTHAM, Senior Circuit Judge.*
 HIGGINBOTHAM, Senior Circuit Judge.
 
 
 1
 This is an appeal from a grant of a directed verdict in favor of defendant, Ford Motor Company, and against plaintiff, Wesley Wall. Wall was injured when he fell off the fender of a tractor. Wall, a Kentucky citizen, brought a diversity action against the manufacturer of the tractor, Ford Motor Company, a Delaware corporation with its principal place of business in Michigan. Wall alleged that a defect in the tractor fender caused him to fall and asserted that Ford was liable under theories of negligence and strict product liability. The action went to trial before a jury in the United States district court for the Eastern District of Kentucky. At the close of Wall's proof, the court directed a verdict in favor of Ford. The court, applying Kentucky law, concluded that Wall could not recover against Ford for two reasons. First, the court held that the Ford tractor was presumed to be not defective, and that Wall had failed to rebut that presumption with a preponderance of the evidence to the contrary. Second, in the alternative, the court held that Wall's contributory negligence was a complete bar to his recovering against Ford. We agree with, and will affirm, the district court's ruling that Wall has failed to rebut the presumption that the Ford tractor was not defective. Accordingly, we do not reach the court's alternative ruling that Wall was also contributorily negligent. The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (1992). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1992).
 
 
 2
 * On May 18, 1989, Wesley Wall was working on a farm in rural Kentucky owned by Annie Baird. Ronald Baird, the manager of the farm, ordered Wall and a co-worker, Paul "Pos" Peavley, to take a feeder-grinder to a dairy barn on the farm. The feeder-grinder was attached to a tractor, a 1972 Model 7000 Ford.
 
 
 3
 The 1972 Model 7000 Ford tractor is designed with only one seat; that of the driver. The tractor has two big rear wheels and two smaller front wheels. Each of the rear wheels is covered with a metal fender. The fender consists of a sheet of metal curved over the top of each rear wheel. Each fender is supported by three pieces of metal called stiffeners. The stiffeners are attached by a bracket to the bottom of the fender and connect the fender to the body of the tractor. The purpose of the fenders is to protect the driver from the debris and mud kicked up by the big rear tires. The tractor has a warning decal posted near the driver seat and headed in bold letters with the words: "Be Careful." The remainder of the decal contains seven rules of safety for operating the tractor. One of these safety rules states: "Do Not Permit Passengers." The tractor on the Baird farm had been sold in 1972. It had been resold on two occasions. The Bairds were the third owners.
 
 
 4
 Following Baird's directions, Peavley climbed into the driver's seat and began to drive toward the dairy barn. Wall boarded the tractor by sitting on the right fender with his feet resting on two bars beneath the driver's seat. As Peavley drove toward the barn, the fender on which Wall was sitting collapsed. Wall fell under the tractor, became entangled in the draw bar that attached the feeder-grinder to the tractor, and was partially pinned beneath one of the rear wheels. As a result, he suffered brain and spinal injuries and numerous cuts and bruises.
 
 
 5
 Wall sued the manufacturer of the tractor, Ford Motor Company, under strict liability and negligence. Wall asserted that the tractor was defectively designed and manufactured because the fenders had a dangerous propensity to collapse. Wall also alleged that the tractor had a warning defect because Ford failed to warn users of the dangerous propensity of the fenders to collapse and of the specific risks involved when the fenders collapsed. On November 18, 1991, the case went to trial before a jury. Wall called Theodore Hopwood as an expert witness to testify on the reason for the fender collapsing. According to Hopwood, the fender collapsed because the three stiffeners which were supposed to reinforce the fender and attach it to the tractor corroded and broke. The stiffeners corroded because water, moisture and manure kicked up by the rear wheels beneath the fenders accumulated on the stiffeners and because drain holes which were drilled on the side of the stiffeners were not effective in preventing accumulation of moisture on the stiffeners.
 
 
 6
 Moreover, Hopwood testified that the stiffeners in the Ford tractor were made up of very thin sheets of metal measuring 50 thousandths of an inch thick which had been constructed into a box-like shape and painted over. The box-like shape of the stiffeners, rather than the thickness of the metal, gave them strength to support the fender. Once moisture began to settle on the stiffeners, they corroded very quickly because the metal was so thin. Hopwood also testified that, since the stiffeners are located underneath the fender, it would not be possible for someone to detect the corrosion.
 
 
 7
 Hopwood proposed three alternative safer designs. The first alternative was to move the placement of the drain holes on the stiffeners so that water and moisture could drain out of the stiffeners more effectively. The second alternative was to move the position of the stiffeners so that the driver of the tractor or any other user would be able to see the onset of corrosion. The third alternative was to have stiffeners constructed of thicker sheets of metal.
 
 
 8
 At the close of Wall's proof the district court granted a directed verdict in favor of Ford. Based on Hopwood's testimony, the Court concluded that Wall had failed to rebut the presumption under Kentucky law that the tractor was not defective. The court also found that Ford was not liable for Wall's injuries because Wall had failed to use ordinary care in sitting on the fender of the tractor.
 
 II
 
 9
 Under Kentucky law, in any product liability action, whether based on negligence or strict liability, a product will be presumed not defective if it satisfies either of two conditions. One condition is "if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of the manufacture." Kentucky Product Liability Act, Ky.Rev.Stat.Ann. § 411.310(1) (Michie 1992). The other condition is if "the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product manufactured." K.R.S. § 411.310(2).
 
 
 10
 If the product meets either of these two conditions, it is presumed not defective unless plaintiff can rebut that presumption with a "preponderance of the evidence to the contrary." K.R.S. § 411.310(1) & (2). Moreover, the Product Liability Act is phrased in terms that there is a presumption that the product is not defective. The Act makes no distinction between design defects, manufacturing defects or even warning defects. Here, it is undisputed that the tractor satisfies the condition under K.R.S. 411.310(1) to be presumed not defective. The tractor was manufactured in 1972. The accident occurred in 1989; more than eight years after the tractor was manufactured. Thus, the tractor must be presumed not defective unless Wall can rebut that presumption with a preponderance of the evidence that the tractor was indeed defective.
 
 
 11
 The district court concluded that Wall failed to present sufficient evidence to rebut the presumption that the Ford tractor was not defective and granted a directed verdict in favor of Ford. We review the grant of a directed verdict using the same standard the district court would apply. O'Neal v. Burger Chef Systems, Inc., 860 F.2d 1341, 1347 (6th Cir.1988). The district court, in ruling on a motion for a directed verdict in a diversity case, applies the standard of the state whose substantive law governs the action. Miller's Bottled Gas, Inc. v. Borg-Warner Corp., 955 F.2d 1043 (6th Cir.1992). The Court of Appeals of Kentucky has stated the standard for ruling on a motion for a directed verdict as follows:
 
 
 12
 The only question to be determined by the court on a motion for a directed verdict is whether the plaintiff has sustained the burden of proof by "more than a scintilla of evidence,".... In so ruling, "The court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion."
 
 
 13
 Grant v. Wrona, 662 S.W.2d 227, 229 (Ky.Ct.App.1983).
 
 
 14
 Thus, the question this court must answer in reviewing the district court's grant of a directed verdict in favor of Ford is this: Has Wall sustained by more than a scintilla of evidence the burden of rebutting with a preponderance of the evidence the presumption that the Ford tractor was not defective?
 
 
 15
 In Ingersoll-Rand Co. v. Rice, 775 S.W.2d 924 (Ky.Ct.App.1989), Rice, the plaintiff, was severely injured while riding on top of a oil drill rig. The rig was mounted on a derrick which, at the time of the accident, was raised to a height of approximately 37 feet. Rice, at the instruction of one of his supervisors, mounted the top of the rig before it was raised by the derrick. After the derrick had been raised and while Rice was on top of the rig, Rice apparently collided with another part of the derrick and fell 37 feet to the ground. The accident occurred more than eight years after the rig had been manufactured.
 
 
 16
 Rice sued the manufacturer of the oil rig for negligence and strict product liability. Rice argued that the rig was defective because it was defectively designed and manufactured and because there was no warning on the rig about the dangers involved in riding on top of it. At trial Rice presented expert testimony that Ingersoll-Rand could have manufactured the rig in a safer way by placing a guard on the top of the rig to prevent workers from riding it.
 
 
 17
 Ingersoll-Rand defended on the grounds that the rig was manufactured in accordance to industry standards, that no other manufacturers placed warnings on their rigs about the dangers of riding it, and that the rig had to be presumed not defective because the accident occurred more than eight years after the rig had been manufactured.
 
 
 18
 The court permitted the case to go to the jury and the jury found in favor of Rice. Ingersoll-Rand appealed on several grounds. One of these grounds was that the expert testimony that the rig could have been designed another way was not sufficient to rebut the presumption that the rig was not defective. The Court of Appeals of Kentucky reversed the trial court and remanded the case on the ground that the trial court had given erroneous instructions to the jury. Ingersoll-Rand, 775 S.W.2d at 932-933. On the issue of whether Rice had rebutted the presumption that the rig was not defective, the court reasoned as follows:
 
 
 19
 "Proof of nothing more than a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to design of the product." On remand, unless Rice can present something more than a conclusion that it was theoretically probable that a different design would have been feasible and would have prevented his injury, we are of the opinion that the issue of strict liability should not be presented to the jury.
 
 
 20
 Id., 775 S.W.2d at 928-29 (quoting Jones v. Hutchinson Manufacturing Company, 502 S.W.2d 66, 70 (1973)).
 
 
 21
 Here, as in Ingersoll-Rand, Wall was injured while riding a vehicle in a way not intended by the manufacturer. As in Ingersoll-Rand, Wall was injured more than eight years after the product had been manufactured, raising the presumption that the product was not defective. And, as in Ingersoll-Rand, Wall presented expert testimony that the product was defective because it was possible to design it in a way that could have prevented Wall's injury. In short, Wall, like the plaintiff in Ingersoll-Rand, has presented proof of nothing more than the Ford tractor could have been designed differently. That, according to the Court of Appeals in Kentucky, is not enough to rebut the presumption that the tractor was not defective. Instead, Wall had to present "something more than a conclusion that a different design would have been feasible and would have prevented his injury...." Id.
 
 
 22
 Kentucky courts have yet to give a detailed explanation of what the "something more" is. But an example of it can be found in Kanawha Steel & Equipment Co. v. Dorsey Trailers, Inc., 662 F.Supp. 131 (E.D.Ky.1987). In that case, a tractor trailer owned by plaintiff was travelling on a highway when the rear set of wheels on the trailer broke loose, crossing into the path of another vehicle and causing a three-vehicle accident. Plaintiff sued the manufacturer of the trailer under negligence and strict product liability. Plaintiff claimed that the rear set of wheels of the trailer broke loose because the trailer had been defectively designed and defectively manufactured. At trial plaintiff presented expert testimony that the rear wheel assembly in the tractor had developed a crack since the first day the trailer was on the road due to the fact that two pieces of metal in the wheel assembly had been insufficiently welded together. The crack gradually worsened until the day of the accident when the rear wheel assembly finally collapsed. The manufacturer of the trailer defended by arguing that the trailer had been sold five years prior to the accident and that plaintiff had failed to rebut the presumption that the tractor-trailer was not defective.
 
 
 23
 The district court for the Eastern District of Kentucky, applying Kentucky substantive law, disagreed. The court held that plaintiff had rebutted the presumption that the tractor-trailer was not defective. Kanawha, 662 F.Supp. at 136.[1] The court reasoned that plaintiff had presented proof of something more than a conclusion that the tractor could have been designed differently. Id. Specifically, plaintiff showed that the tractor-trailer contained a hidden defect from the day it was manufactured and that this defect was inexorably made worse as the tractor-trailer was put through normal use. Id.
 
 
 24
 Wall has not presented any evidence that the tractor contained a hidden defect that was inexorably made worse through normal use. Instead, Wall has merely shown that it was theoretically possible to design the stiffeners in the Ford tractor a different way and that such alternative design could have prevented his injury. Under the Ingersoll-Rand rationale, that is not enough to go to the jury.
 
 
 25
 We will, therefore, affirm the district court's grant of a directed verdict in favor of Ford.
 
 
 
 *
 The Honorable A. Leon Higginbotham, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 In Kanawha Steel & Equip. Co. v. Dorsey Trailers, Inc, 856 F.2d 780 (6th Cir.1988), this court reversed in part the judgment of the district court. The district court had held that the manufacturer of the tractor-trailer was entitled to fifty percent contribution from the manufacturer of the wheel assembly incorporated into the trailer. The manufacturer of the trailer appealed to this court, arguing that it was entitled to full indemnity from the manufacturer of the wheel assembly. We agreed with the manufacturer of the tractor-trailer and reversed the district court inasmuch as it had denied the manufacturer of the tractor-trailer full indemnity from the manufacturer of the wheel assembly. Id. 856 F.2d at 783. Our decision, however, left intact the holding of the district court regarding the question of whether the tractor-trailer was defective